EXECUTIVE COMMUNICATION AND ADVISORY OPINION.

In the matter of the Executive communication of January 12, 1889, relative to the filling of vacancies in elective county offices:

EXECUTIVE OFFICE,
TALLAHASSEE, FLA., Jan. 12, 1889.

*To the Honorable, the Justices of the Supreme Court of Florida:*

GENTLEMEN: I have the honor to ask your opinion as to

the interpretation of the Constitution of this State in regard to my executive duties and powers thereunder, in the following cases, to-wit:

Certain persons who were elected to county offices in certain of the counties of this State, at the general election held on the 6th day of November, 1888, have failed to give bond and qualify within sixty days after such election, whereby such offices have become vacant, as provided by section 7, Article VIII, of the Constitution.

Has the Governor the power to fill such vacancy or other vacancies which may occur in the case of an elective county office by appointment, and if so, for what time should such appointment be made? I remain with high respect, etc.,

FRANCIS P. FLEMING, Governor.

1. When the term of an elective county office, to which a person has been elected for the entire term, has commenced, and there is a vacancy in the office on account of the failure of the person elected to give bond and qualify as required by §7, of Article VIII of the Constitution, the Governor may fill the vacancy by appointment.

2. Such appointee will hold, not for the remainder of the term, but only until the qualification of a successor chosen at the next ensuing general election to be held in accordance with §9 of Art. XVIII.

SUPREME COURT OF THE STATE OF FLORIDA, }
TALLAHASSEE, Fla., Jan. 16, 1889. }

*To Hon. Francis P. Fleming, Governor of the State of Florida:*

SIR: We have the honor to acknowledge the receipt of your communication of the 12th inst. You state that certain persons who were elected to county offices at the general election, held on the 6th day of November last, have failed to give bond and qualify within sixty days after such

election, and thereby such offices have become vacant, and you ask our interpretation of the Constitution as to the power of the Governor to fill by appointment such or other vacancies that may occur in elective county offices, and if so, for what time the appointment should be made.

Considering Section 6 of Article VIII, and Sections 9 and 10 of Article XVIII, together, it is plain that the first election of the following county offices, viz: Clerk of the Circuit Court, Sheriff, Constables, County Assessor of Taxes, Tax Collector, County Treasurer, Superintendent of Public Instruction, and County Surveyor and Justices of the Peace, and all elective county offices, was to take place on the first Tuesday after the first Monday in November, A. D. 1888. By Section 14 of Article XVIII it is provided that "the terms of office of all county officers, unless otherwise provided, shall commence on the first Tuesday after the first Monday in January next after their election."

The elective county officers, chosen at the election in November last, have not been excepted from the provisions of the last section as to the commencement of the terms for which they were elected.

Section 7 of Article VIII of the Constitution requires that all county officers, except Assistant Assessors of Taxes, shall, before entering upon the duties of their respective offices, be commissioned by the Governor, but provides that no such commission shall issue to any such officer until he shall have filed with the Secretary of State a good and sufficient bond, in such sum and upon such conditions as the Legislature shall by law prescribe, approved by the County Commissioners of the county in which such officer resides, and by the Comptroller. The last Legislature passed an act, chapter 3724, Laws of 1887, approved June 2, 1887, prescribing the sums and conditions of the bonds

to be given by such officers. The above section of the Constitution also provides as follows : " If any person elected or appointed to any county office shall fail to give bond and qualify within sixty days after his election, the said office shall become vacant."

The question of your power to fill vacancies occasioned by the failure of persons elected to county offices to give bond and qualify within the sixty days just mentioned, involves a consideration of several sections of the Constitution. Sections 6, 7 and 9 of the schedule, or eighteenth article, are as follows :

Section 6. The term of office for all appointees to fill vacancies in any of the elective offices under this Constitution shall extend only to the election and qualification of a successor at the ensuing general election.

Section 7. In all cases of elections to fill vacancies in office such election shall be for the unexpired term.

Section 9. A general election shall be held in each county in this State on the first Tuesday after the first Monday in November, A. D. 1888, and every two years thereafter, for all elective State and county officers, whose terms of office are about to expire, or for any office that shall have become vacant.

These three sections cover vacancies in elective county offices, and a vacancy of the character specified by you must, in view of Section 7 of Article VIII, *supra*, be held to be within their meaning. Considering sections 6 and 7 of the schedule together, we see that the former contemplates the filling of a vacancy by appointment and the latter by an election. Though the word *appointees* may sometimes include in its signification any person elected or designated by popular vote for an office, such construction of it in the connection in which it is presented here is, we think, untenable. If such had been the sense in or purpose for

which it was used, there would have been no necessity for the next or seventh section. Again, the latter section shows an express intention that any person elected to fill a vacancy shall hold for the balance of the unexpired term, whereas the former section is equally explicit in providing that one appointed to the vacancy shall hold only to the qualification of the person chosen at the ensuing general election to fill the remainder of such vacancy. If we should give to the word *appointees,* as used in the sixth section, a signification inclnding persons chosen at a popular election, we would be met with the anomaly that by this section of the Constitution it is provided that a person elected to a vacancy in an elective office shall hold for one period of time, whereas by the seventh section he is to hold for an entirely different period.

Our understanding of these two sections, as applicable to elective county offices, is that when a vacancy occurs in any of them, an appointment to fill such vacancy may be made by the Governor, and that such appointee holds until the qualification of the person who may be chosen at the ensuing general election to fill the residue of the term, after such election.

That this is the correct interpretation is made more apparent by the ninth section, in providing that a general election shall be held on the first Tuesday after the first Monday in November, and every two years thereafter, for, among other purposes, "any òffice that shall have become vacant." This is the "general election" which is referred to in the sixth section, and at which the person is to be elected whose "qualification" terminates the tenure of the appointee holding under the sixth section. The seventh section prescribes the term of the person chosen at an elec·tion held under the ninth section to fill a vacancy in an elective county office.

It is clear, we think, that these sections contemplate that upon a vacancy occurring in an elective county office the vacancy may be filled by appointment, and that such an appointment, when made, shall continue not merely until the election of a successor at a special election, and his qualification, but until the qualification of a successor, chosen at the ensuing general election, to be held as provided by section nine.

In reaching the conclusion announced above we have not overlooked section 7, of the executive article, which is as follows :

When any office from any cause shall become vacant and no mode is provided by this Constitution, or by the laws of the State for filling such vacancy, the Governor shall have power to fill such vacancy by granting a commission for the unexpired term.

Under this section no appointment is to be made to fill a vacancy except when neither the Constitution nor the laws provide a mode for filling it, and of course where the appointment is not made under it, its provisions as to the duration of fhe appointment do not apply.   Section 7 of the executive article of the Constitution of 1868 was in substantially the same language, except that the commission was " to expire at the *next election*," and it was held that the power vested in the Governor by it was not a power to fill the office for the unexpired term, but only for the time intervening between the occurrence of the vacancy and the filling of the office by an election by the people, and that a special election could be held to fill the office for the unexpired term.   Weeks vs. Gamble, 13 Florida, 9 ; State vs. Weeks, 14 Florida, 9.   The difference in the effect of the two sections as to the duration of the appointment is manifest.

As to the vacancies in elective county offices, covered by your inquiry, the Constitution has, however, as indicated

by the above sections of the schedule, provided a mode for filling them until the general election to ensue after the occurrence of the vacancy, and the qualification of the person chosen at it. When the term of the office which a person has been elected to fill as an entire term has begun to run, and there is a vacancy in it, the Constitution gives you the power to supply not the entire vacancy, but limits the term of your appointee to the period stated in the sixth section of the article just mentioned, instead of extending it to the entire balance of the term. Advisory opinion, 14 Fla., pp. 277, 282.

If it be assumed that the legislation of 1887, sections 4, 5, 6, Chapter 3704, is to be construed as inconsistent with this power, our opinion is that the power cannot be taken away by the Legislature.

Very respectfully,

GEO. P. RANEY, Chief Justice.
A. E. MAXWELL, Justice.
H. L. MITCHELL, Justice.

THE DISSENTING OPINION BELOW SHOULD
HAVE FOLLOWED THE OPINION OF THE
COURT, PAGE 118, OF THIS VOLUME.

Frank Reddick, Plaintiff in Error, vs. The State of
Florida, Defendant in Error.

Maxwell, J., dissenting: Not concurring in the decision of a majority of the court in this case, I shall briefly state wherein I dissent. Whether Ligon's testimony was improperly admitted, I shall not discuss, though on the authority of 36 Ala., 514, Ingram vs. State, 67 Ala., 67, State vs. Jerome, 33 Conn., 265, and Best's Principles of Evidence, §261, I am not satisfied that the court erred in admiting it. But if it did I think the error an immaterial one. The evidence was for the purpose of rebutting that which had been given in favor of the character of defendant. Evidence of good character as a defence against a charge of crime is of little weight except in doubtful cases, and the rebutting evidence must be measured by the same rule. It would be a startling doctrine to say, where the facts clearly show a case of guilt, that evidence of good character, though admissible, should have any weight against those facts.

In my judgment the facts of this case, irrespective of the evidence of Ligon, amply sustain the verdict of the jury, but from obvious reasons, as the case is to be tried again, I refrain from collating and discussing the evidence to justify my conclusion. It is enough to say that I think the facts

of the case which support the verdict could not be affected one way or the other by the presence or absence of Ligon's testimony. Throwing that testimony out, the case remains in its substantial merits, with the finding of the jury, and if it does a new trial should not be granted. Hilliard on New Trials, §11, p. 57.

When from a careful consideration of all the evidence in a case I entertain no doubt of the correctness of the verdict, I am averse to sending back for a new trial, in mere deference to rules of law that operate in the case more to prolong the trial unnecessarily and to obstruct the business of the court than to obtain substantial justice ; and even if there was mistake as to the admissibility of Ligon's evidence in regard to having chased defendant, I do not think, in view of the sufficiency of the evidence without it, that the error should lead us to grant a new trial.