**Pamela Rose RODRIGUEZ, Plaintiff,**

v.

**AMERICAN AMBASSADOR CASUALTY CO., Defendant.**

No. 97–1126–CIV–T–23A.

United States District Court,
M.D. Florida,
Tampa Division.

April 21, 1998.

Lefferts L. Mabie, III, Lefferts L. Mabie, III, P.A., Tampa, FL, for Plaintiff.

William F. McGowan, Jr., Joseph V. McNabb, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for Defendant.

## ORDER

MERRYDAY, District Judge.

Before the Court are the parties' cross motions for summary judgment (Docs. 37 and 51). Pursuant to 28 U.S.C. § 636, the magistrate judge considered this matter and filed a report and recommendation (Doc. 63), recommending that the defendant's motion be granted and the plaintiff's motion be denied. The plaintiff filed objections to the report and recommendation (Doc. 64). The Court conducted a *de novo* review.

Upon consideration, the plaintiff's objections are **OVERRULED** and the magistrate judge's report and recommendation is **ADOPTED** and **INCORPORATED** in this order. Accordingly, the defendant's motion for summary judgment (Doc. 37) is **GRANTED** and the plaintiff's motion for partial summary judgment (Doc. 51) is **DENIED**. The Clerk shall enter judgment accordingly and close the file.

## REPORT AND RECOMMENDATION

PIZZO, United States Magistrate Judge.

March 24, 1998.

In this diversity action, the Plaintiff contends her automobile insurer acted in bad faith for not telling her about an attractive settlement offer—an offer to settle all claims, even those the policy did not cover. The injured party, a pedestrian whom the Plaintiff struck, eventually secured a significant judgment against her in state court for these uncovered claims; consequently, the Plaintiff is now suing the Defendant for this unsatisfied amount. Both sides have moved for summary judgment (docs. 37, 51). I find the Defendant did not act in bad faith because it had not assumed any duty to act or defend the insured for personal injury claims clearly not covered by the policy; accordingly, I recommend that summary judgment be entered for the Defendant.[1]

---

1. United States District Judge Steven D. Merryday has referred this matter to me pursuant to his authority under 28 U.S.C. § 636(a) and Local Rule 6.01.

## A. Standard of Review

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. *Anderson,* at 255, 106 S.Ct. 2505.

## B. Facts [2]

In November 1995, the Plaintiff purchased an automobile insurance policy from the Defendant that covered property damage liability, basic personal injury protection, comprehensive, and collision. The Plaintiff limited the policy's property damage liability and personal injury protection to $10,000; furthermore, she specifically rejected bodily injury liability coverage. On March 14, 1996, Plaintiff struck and severely injured a pedestrian. She told the Defendant about the accident that same day. The next month, the pedestrian's attorney, Mr. Swope, notified the Defendant he represented the injured party and requested it forward the Plaintiff's policy information. The Defendant promptly outlined the policy limits and informed counsel the contract did not cover bodily injury (doc. 45, exhibits 1 and 2). Nonetheless, the pedestrian submitted to Defendant claims of liens of at least $42,768.15

in medical expenses arising from the accident.

In May, Swope's firm sent Defendant's third-party claims manager a letter demanding settlement for his client's property damage. In the letter, the law firm also offered to release the Plaintiff from *all* claims, both property *and* potential personal injury claims, if the Defendant paid $536.58 in property damages by a certain date. The Defendant failed to meet this deadline; so, the pedestrian sued Plaintiff on June 18 seeking damages for bodily injuries from the accident. Notably, she did not ask for property damages in her lawsuit, and the parties now agree the Defendant had no duty defend the Plaintiff in that action.

On July 3, the Plaintiff hired a lawyer, Ms. Reineke, who filed an answer to the complaint denying liability (doc. 43, p. 5). After receiving the answer, Swope contacted Reineke and informed her of his May settlement offer to the Defendant. Two months before the anticipated December trial date, Reineke wrote the Defendant instructing it that she represented the insured in the lawsuit filed by the injured pedestrian. Counsel included a copy of the complaint and "encouraged" the company "to re-evaluate its position and to take an active part in this lawsuit." Reineke also commented: "I firmly believe that the only reason that the Plaintiff and her attorney's are pursuing this action is because they believe your company is wrongfully denying coverage and will be responsible for the Plaintiff's damages" (doc. 43, exhibit 14). Soon after receiving this letter, the Defendant advised Reineke it had acted properly. The policy did not cover bodily injury, and the lawsuit only claimed those damages (doc. 41, ¶s 18–23; doc. 43, exhibit 15). In fact, at this time the Defendant agreed with the injured pedestrian's lawyer to settle the property damage claim for $150.

Although Plaintiff maintained she was not at fault for the accident, she settled the pending lawsuit for $2,000,000.00. In return,

---

**2.** In accordance with the district court's standing order for cases scheduled on the accelerated trial calendar (doc. 18), the parties have filed a stipulated statement of undisputed facts (doc. 39). This portion of the report summarizes that docu-

ment. As to matters not referenced in the stipulation but found elsewhere in the record, I have identified their source. These facts also appear to be undisputed.

the pedestrian promised not to record a certified copy of the judgment or docket the execution, nor seek any levy or garnishment of Plaintiff's assets for three years, or until Plaintiff concluded her lawsuit against Defendant, whichever occurred last. Plaintiff reached this agreement notwithstanding the fact that her lawyer did not attend the settlement conference, did not conduct any discovery, and did not interview anyone but Plaintiff about the accident (doc. 43, pp. 19–21). In spite of the judgment, Plaintiff still denies any fault for the accident (stipulated fact # 20; doc. 44, pp. 33–35).

In May 1997, the Plaintiff filed this two-count complaint in state court contending the Defendant acted in bad faith by failing to tell her about (and also accept for her) Swope's May settlement offer. Plaintiff says she would have accepted the attractive settlement if she had known about it. The Defendant removed the action to federal court and both sides have moved for summary judgment.[3]

### C.  Issues

At issue is the breadth of an insurer's fiduciary duty to defend its insured. According to the Plaintiff, that duty is broad. She contends the Defendant had an obligation to inform her about all settlement offers, even for claims not covered by the policy. Moreover, this duty applies though the Defendant did not defend her against bodily damage claims, did not assume any representative role for her, and did not participate in the settlement agreement. The Defendant, of course, strenuously argues its fiduciary obligations are not so broad. It asserts the Plaintiff cannot create coverage for personal injury claims, particularly one resulting in a $2,000,000 settlement, where none ever existed.

### D.  Discussion

■ Florida recognizes the principle that an insurer's duty to defend an insured is broader than the duty to indemnify. *Allstate Insurance Co. v. RJT Enterprises, Inc.*, 692 So.2d 142, 144 (Fla.1997); *Aetna Insurance*

*Co. v. Borrell–Bigby Electric Co., Inc.*, 541 So.2d 139 (Fla. 2d DCA 1989); *Kopelowitz v. Home Insurance Co.*, 977 F.Supp. 1179, 1185 (S.D.Fla.1997). However, without an express statutory or contractual duty to defend, there is no such duty. *Allstate Insurance Co. v. RJT Enterprises, Inc.*, 692 So.2d at 144. For example, an insurer who accepts the defense of claims against the insured has a duty to use the same degree of care and diligence as a person of ordinary care and diligence in managing her own business. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980). Or, if the insured has surrendered to her insurer all control over the handling of the claim, including decisions about litigation and settlement, then the insurer must assume a duty to exercise control and make appropriate decisions. *Id.* In these circumstances, an insurer has a good faith duty to advise the insured of settlement opportunities and possible outcomes of the litigation, including the possibility of excess judgment, so that she can make informed decisions. *Ging v. American Liberty*, 423 F.2d 115 (5th Cir.1970); *Boston Old Colony Ins. Co.*, 386 So.2d at 785. Thus, the insurer must investigate the facts, fairly consider reasonable settlement offers, and settle, if possible, where a prudent person, faced with the prospect of paying the total recovery, would do so. *Id.*

■ Plaintiff cites these same cases to argue the Defendant had a fiduciary duty to tell her about and accept Swope's May settlement offer. She offers, however, no evidence or authority showing her insurer had a statutory or contractual duty to defend her against the pedestrian's personal injury claims. Nothing in the record suggests the Defendant offered, or even impliedly offered, to represent her against any personal injury claims. Indeed, no such evidence exists because Plaintiff rejected bodily damage protection. Simply put, she cannot meet Florida's predicate requirements for broadening her insurer's fiduciary duty to defend her as she contends. The Defendant did not have a duty to defend bodily damage claims because the policy did not cover them. *See, e.g.,*

---

**3.** Plaintiff's summary judgment is limited to her argument that the Defendant should have advised her of the opportunity to settle the injured pedestrian's claims (doc. 51, p. 3).

*Spencer v. Assurance Co. of America,* 39 F.3d 1146 (11th Cir.1994) (summary judgment entered for insurer against assignee seeking indemnification because policy did not cover underlying claim and insurer had no duty to defend).[4]

### E. Conclusion

Plaintiff, or more accurately the injured pedestrian's lawyer, tried to create insurance coverage where none ever existed.[5] Defendant had no contractual or statutory duty to defend the Plaintiff against bodily damage claims not covered in the policy. Neither the Plaintiff nor the pedestrian's counsel can manufacture such a fiduciary duty here. Accordingly, I recommend that **Defendant's motion for summary judgment (doc. 37) be GRANTED** and **Plaintiff's motion for partial summary judgment (doc. 51) be DENIED.**

---

4. Defendant correctly observes that Plaintiff's cited cases involve either a judgment on a covered event in excess of policy limits or a judgment for punitive damages arising from an otherwise covered event. Defendant cites no case for the proposition that a duty to defend exists as to claims for which the insured expressly rejected coverage.

5. Obviously, the pedestrian's counsel crafted this strategy. His client could only collect from the Defendant the value of the items she wore, and the Plaintiff had no financial resources to cover the potentially costly personal injury damages. To offer to settle the property claim *and her extensive personal injury claim* for a little more than $500 would have been irresponsible otherwise. *See, e.g.,* doc. 43, exhibit 10 (Reineke's notes of her conversation with Swope in August 1996: "Swope thinks American Ambassador is on the hook for judgment b/c wrongfully denied coverage.")