SPHINX INTERNATIONAL, INC. f/k/a/ Phoenix International, Ltd., Inc.; Bahram Yusefzadeh; and RAJU Shivdasani Plaintiffs,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and Genesis Indemnity Insurance Company, Defendants.

No. 6:01CV1462–ORL–19KRS.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 13, 2002.

**1328**

David H. Simmons, Bart R. Valdes, Drage, de Beaubien, Knight, Simmons, Mantzaris & Neal, Orlando, FL, for Plaintiffs.

Daniel C. Johnson, Carlton Fields, P.A., Tampa, FL, Steven J. Brodie, K. Renee Schimkat, Carlton Fields, P.A., Miami, FL, Lewis K. Loss, Ross, Dixon & Bell, L.L.P., Washington, DC, Lora A. Dunlap, Jon Marshall Oden, Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., Orlando, FL, Jeffrey J. Ward, Ross, Dixon & Bell, Washington, DC, for Defendants.

## ORDER

FAWSETT, District Judge.

This case comes before the Court upon the following:

(1) Defendant Genesis Indemnity Insurance Company's Motion to Dismiss, or in the Alternative, for Summary Judgment, and Supporting Memorandum of Law (Doc. No. 26, filed January 31, 2002), and Plaintiffs' Response to Defendant Genesis Indemnity Insurance Company's Motion to Dismiss Plaintiffs' Complaint, or in the Alternative, for Summary Judgment (Doc. No. 35, filed February 26, 2002).[1]

(2) Plaintiffs' Unopposed Motion for an Enlargement of Time to File A Memorandum of Law in Opposition to Defendant Genesis Indemnity Insurance Company's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 33, filed February 19, 2002);

(3) Defendant Genesis Indemnity Insurance Company's Motion for Leave to File a Reply Memorandum, or, in the Alternative, for Oral Argument (Doc. No. 45, filed April 16, 2002), and Plaintiffs' Response to Defendant Genesis Indemnity Insurance Company's Motion for Leave to File a Reply Memorandum or, in the Alternative, for Oral Argument (Doc. No. 46, filed April 29, 2002);

(4) Plaintiffs' Motion to Strike Defendant, Genesis Indemnity Insurance Company's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 52, filed May 31, 2002);

(5) Plaintiffs' Dispositive Motion for Partial Summary Judgment Against Genesis Indemnity Insurance Company and Request for Oral Argument With Memorandum of Law in Support Thereof ( Doc. Nos. 68 and 69, filed June 26, 2002), and Defendant Genesis Indemnity Insurance Company's Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 84, filed July 25, 2002); and

(6) Joint Request for Referral to Magistrate (Doc. No. 85, filed July 29, 2002).

## BACKGROUND

In this action, Plaintiffs seek insurance coverage under two contracts issued by

---

1. Since both parties have filed affidavits in support of their positions, the Court will treat Defendant's submission as a motion for summary judgment rather than a motion to dismiss.

Genesis Indemnity Insurance Company ("Genesis") on or about July 1, 1996.

The first, Director and Officers Liability Insurance Policy # ZXHB000865 (the "D & O" policy), was issued to Phoenix International, Ltd. ("Phoenix") for the policy period July 1, 1996 to July 1, 1999. (Defendant's Motion to Dismiss, p. 2; Ex.1). Under its terms, the D & O policy provided coverage for loss resulting from claims first filed during the policy period against the directors and officers of Phoenix that alleged they had committed "any actual or alleged negligent act, omission or error, including but not limited to, any negligent misstatement, misleading statement, neglect or breach of duty by the DIRECTORS OR OFFICERS in the discharge of their duties in their capacity as DIRECTORS OR OFFICERS of the COMPANY, individually or collectively." *Id.* at 3.

The D & O policy also provided coverage to Phoenix for loss resulting from "Securities Claims" first made against Phoenix during the policy period. The D & O policy defined securities claims to include claims arising out of alleged violations of law concerning the purchase, sale, or transfer of securities on the open market, but specifically excluded claims alleging violations of law concerning any Registration Statement, Preliminary Prospectus, or Prospectus. *Id.*

The second policy, Directors and Officers Prospective Liability Policy # ZXB000866 (the "Prospectus" policy) provided, *inter alia*, coverage regarding the PHOENIX INTERNATIONAL, LTD., INC., Registration Statement filed and/or declared effective with the Securities and Exchange Commission ("SEC") on

July 1, 1996. (Plaintiffs' Response to Motion to Dismiss, p. 3, Ex.2) The same policy also originally covered the PHOENIX INTERNATIONAL, LTD., INC. Prospectus filed on July 1, 1996 for a period of three (3) years ending on July 1, 1999. *Id.* The parties later amended this policy to extend coverage for the PHOENIX INTERNATIONAL, LTD., INC. Prospectus for Secondary Public Offering of Securities for one (1) year beyond the initial policy period. *Id.* at 4.[2]

Both the D & O and the Prospectus policies contained an "insured vs. insured" exclusion. It is this exclusion that is at the heart of the instant litigation. The provision excludes from coverage claims made against the insureds:

> By or at the behest of the COMPANY, or any affiliate of the Company or any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any DIRECTOR or OFFICER or the COMPANY; provided, however, this exclusion shall not apply to wrongful termination employment claims brought by a former employee other than a former employee who is or was a DIRECTOR or OFFICER of the COMPANY.

D & O policy, Section IV. K; Prospectus Policy IV.K Both policies define "DIRECTORS" and "OFFICERS" as "persons who were, now are, or shall be duly elected Directors or duly elected or appointed Officers of the COMPANY, including their estates, heirs, legal representa-

---

**2.** Both the D & O and Prospectus policies are "claims made" policies. Claims made policies cover liability incurred from claims that are made during the policy period, regardless of when the events giving rise to the claims occurred. In the instant case, the D & O policy had expired before the underlying claim at issue was filed. Therefore, only the Prospectus policy is implicated in this action.

tives or assigns in the event of their death, incapacity or bankruptcy." D & O policy, Section II; Prospectus Policy, Section II.

On or about November 23, 1999, George Taylor, a former officer and director of Phoenix, filed a purported securities class action complaint captioned, *Taylor v. Phoenix International, Ltd.,et al.*, U.S. District Court, Middle District of Florida, Case No. 99-1495-CIV-ORL-18C. On the same day, Taylor published a notice over *Business Wire*, a national newswire service, soliciting other Phoenix securities holders to discuss with Taylor's counsel their rights or interests with respect to the *Taylor* suit. *See* Ex. 5, Vinale Aff. at ¶ 3, and Exhibit B (Doc. No. 26). The other lead plaintiffs in the suit were recruited from this notice. *Id.* On May 5, 2000, Taylor and the other lead plaintiffs filed an amended complaint. *See* Exhibit 6.

Phoenix submitted a claim for coverage in connection with the action to Genesis, which denied it on the basis of the insured v. insured exclusion. On or about October 18, 2001, Plaintiffs initiated this action against National Union and Genesis in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Flori-da.[3] On or about December 11, 2001, the case was removed to this Court.

## SUMMARY JUDGMENT STANDARD

Summary judgment is authorized "if the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The Court has instructed that 'the substantive law

will identify which facts are material' and that the trial judge, ruling on a summary judgment motion, must evaluate the evi-dence presented by the substantive eviden-tiary burden." *Brown v. Crawford*, 906 F.2d 667, 669-70 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 248, 254, 106 S.Ct. 2505).

The moving party bears the burden of proving that no genuine issue of material facts exists. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the mov-ing party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most fa-vorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir.1993) (citation omitted). If a rea-sonable fact finder could draw more than one inference from the facts, and that in-ference creates an issue of material fact, then a court must not grant summary judgment. *Id.* Summary judgment is ap-propriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## ANALYSIS

Plaintiffs make five arguments as to why Genesis' motion for summary judgment should not be granted, and why their mo-tion for summary judgment against Gene-sis should be granted. First, they contend that George Taylor was never a "duly" elected or appointed officer or director of

---

**3.** National Union filed a motion to compel alternative dispute resolution based on a pro-vision in its policy with Plaintiffs. The Court granted that motion on June 25, 2002. (Doc. No. 67)

Phoenix and therefore is not subject to the insured v. insured exclusion. Second, they argue that there is no evidence of collusion so as to implicate the insured v. insured exclusion. Third, they contend that, based on the Complaint in the Securities Claims Action, Defendant was required to defend Plaintiffs. Fourth, Plaintiffs maintain that, as a matter of law, their expectation of coverage is sufficient to preclude summary judgment. Fifth, Plaintiffs allege that as construed by Genesis, the insured v. insured exclusion "swallows up" the entire policy, is patently ambiguous, and therefore must be construed against the insurer. The Court will address each argument in turn.[4]

### 1. Was George Taylor "Duly" Elected or Appointed?

Plaintiff Yusefzadeh states that he was first introduced to Taylor in July 1992 during negotiations for the purchase of international rights to software owned by S & L Data. Taylor told Yusefzadeh that instead of licensing the product, he should found his own company. *See* Yusefzadeh Aff. ¶¶ 3–4. Yusefzadeh founded Phoenix on or about January 23, 1993. As an inducement for Taylor's services and long term loyalty, Yusefzadeh agreed to make him an officer and director of the company and to make available to him 10% of the shares of the new company. *Id.* at ¶ 5. Subsequently, Phoenix learned that Taylor was subject to a covenant not to compete with S & L Data and that he had misrepresented his technical and banking exper-

tise. As a result, the board of directors terminated Taylor's relationship with Phoenix on or about July 1994. *Id.* at ¶¶ 7, 9, 10.

Plaintiffs note that the insured v. insured exemption applies only to "duly" elected or appointed officers or directors and argue that the term "duly" is given special meaning when used before any word supplying action. They define "duly" as an act that is done "properly, regularly, and according to law." *Robertson v. Perkins,* 129 U.S. 233, 236, 9 S.Ct. 279, 32 L.Ed. 686 (1889). They cite *Welborn v. Whitney,* 190 Okla. 630, 126 P.2d 263, 265 (1942), for the proposition that "duly does not relate to form merely, but includes form and substance, and implies the existence of every fact essential to perfect regularity of procedure." Based on *Welborn* and *Robertson,* they assert that the statement that one was "duly" appointed means according to legal requirements and implies the existence of every fact essential to perfect regularity of procedure. *Cheshire v. First Presbyterian Church,* 220 N.C. 393, 17 S.E.2d 344 (1941). Thus, they maintain that Taylor did not qualify for the position of director or officer due to the non-compete clause with S & L Data and because his placement on the board of directors was induced by fraudulent misrepresentations.

Plaintiffs acknowledge that at one time Taylor was a "de facto" director and officer of Phoenix, but they argue that there is a distinction between "de facto" and "de

4. As noted above, Defendant filed a motion for summary judgment on January 31, 2002 (Doc. No. 26). Plaintiffs responded on February 26, 2002 (Doc. No. 35). Plaintiffs then filed their own motion for partial summary judgment on June 26, 2002 (Doc. No. 68), to which Defendant responded on July 25, 2002 (Doc. No. 84). Since the arguments presented in both summary judgment motions and responses are virtually identical, although somewhat refined and expanded in the Plain-

tiffs' motion for summary judgment and Defendant's corresponding response, the Court will only address the issues once. In their initial response to Defendant's Motion for Summary Judgment (Doc. No. 35), Plaintiffs also raised the issue that a motion for summary judgment was premature because little or no discovery had been taken. Since Plaintiffs have now brought their own motion for summary judgment, that issue appears to be moot.

jure" directors. They maintain that a "de facto" director or officer is one who has the reputation of being a director, may hold title or possession of such position, or may even have been elected to the position, but nonetheless fails to be a proper director because of some ineligibility or failure to qualify as required by law. *U.S. v. MPM Contractors, Inc.*, 763 F.Supp. 488 (D.Kan.1991); *Deal v. Johnson*, 362 So.2d 214 (Ala.1978). Plaintiffs contend that Taylor falls into that category, and since the insured v. insured exclusion only applies to duly elected directors and officers, they maintain that it does not apply to "de facto" directors and officers. In order to have been a duly elected director or officer, Taylor would have had to be a "de jure" director.

Finally, Plaintiffs point out that a contract induced by fraud is voidable. *Lance Holding Co. v. Ashe*, 533 So.2d 929 (Fla. 5th DCA 1988). They assert that a contract that is voidable cannot be according to law and/or proper in both substance and form. It is therefore impossible for Taylor to have been "duly" elected. Summing up their argument, they state that if Taylor was not "duly" elected, then he does not fall under the definition of Director and Officer in the Genesis policy. If Taylor was not "Director and Officer" pursuant to the terms of the Genesis policy, then Taylor is not an "insured" and the insured v. insured exclusion cannot apply.[5]

Defendant initially takes issue with Plaintiffs' definition of "duly" in this context. As previously noted, the cases relied on by Plaintiffs define duly as implying the existence of "every fact essential to perfect regularity of procedure." Defendant contends that Plaintiffs have erroneously read

the verb per-FECT (i.e. to bring to final form) as the adjective PER-fect (flawless). Under this construction coverage would be limited to those whose elections are flawless. Defendant argues that that construction makes no sense and is contrary to Florida law.

■ Under Florida law, the terms of an insurance policy are to be used in their plain and ordinary sense and given their everyday meaning as understood by the "man on the street." *Thomas v. Prudential Property and Casualty*, 673 So.2d 141, 142 (Fla. 5th DCA 1996); *Federated Mutual Insurance Company v. Germany*, 712 So.2d 1245 (Fla. 5th DCA 1998). It is well established that Florida courts commonly adopt the meanings of words contained in legal and non-legal dictionaries. *Continental Casualty Company v. Wendt*, 205 F.3d 1258, 1263 (11th Cir.2000) (citing Florida law).

■ As noted by Defendant, the definition of "duly" found in Webster's dictionary is "in a due manner, time, or degree." The use of the term "duly elected" defines and limits the universe of insureds to those have attained officer or director status in a due manner—that is through regular and proper channels of corporate governance. Based on that "ordinary" definition, Taylor was a "duly elected or appointed" officer or director under the Genesis policy.

Further, Phoenix represented Taylor as an officer and director to the public and to government regulators even after Taylor had been fired. Phoenix's 1994 annual filing with the Florida Department of State designated Taylor as Vice President, Director under the heading "OFFICERS AND DIRECTORS." Phoenix's 1995 an-

---

5. Plaintiffs also cite several Florida Supreme Court decisions in which the Court held that candidates who were elected to office without the proper qualifications would have to vacate the office. *State ex rel. Landis v. Bird*, 120 Fla. 780, 163 So. 248 (1935); *In re Advisory Opinion*, 25 Fla. 426, 5 So. 613 (Fla.1889); *In re Advisory Opinion*, 65 Fla. 434, 62 So. 363 (Fla.1913), and *Opinion of Justices*, 14 Fla. 277 (1872).

nual report also lists Taylor as a director and officer. Phoenix's Form S–1 Registration Statement with the SEC on May 8, 1996, listed Taylor as a member of the Board of Directors. Phoenix's application for the Prospectus Liability Policy stated, in response to a question whether there had been any changes in the Board of Directors or senior management within the past three years, that Taylor was a Senior Vice President and Director until he resigned in July 1994. Although Plaintiffs now maintain that Phoenix terminated Taylor in July 1994, they represented to Genesis on June 17, 1996 in their application for the Prospectus Liability Policy that Taylor resigned from the company, thereby qualifying him as a former director and officer. (Doc. No. 26, Ex. 10). Thus, Plaintiffs represented to the public, the regulators and the insurer over a period of time that Taylor was a duly elected or appointed director and officer.

■ Under the terms of the Genesis policy, Phoenix would have been protected from claims brought against the company based on actions of Taylor in his capacity as a former director or officer. As Defendant notes, Plaintiffs now want to have it "both ways." They chose to keep the positive benefit under the Genesis policy of naming Taylor as a former director or officer, but now want to avoid the negative implications of this designation. Under Florida law that is impermissible. Florida follows the generally accepted contract principle that "one may not accept the fruits of a contract and at the same time renounce, or repudiate, the burdens which that contract places on him." *Spurrier v. United Bank*, 359 So.2d 908, 910 (Fla. 1st DCA 1978); *See also United Chemicals,Inc. v. Welch*, 460 So.2d 540 (Fla. 1st DCA 1984); *Fineberg v. Kline*, 542 So.2d 1002 (Fla. 3d DCA 1989).

■■ Finally, there is a legal difference between a contract that is void and one that is voidable. Even assuming that Taylor acquired his position at Phoenix through fraudulent misrepresentation, this would only render his employment contract voidable, not void. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 313 (Fla.2000). To void a contract induced by fraud, the innocent party must affirmatively rescind the contract. *Id.* The Florida Supreme Court has held that "the legal fictions which accompany a judgment of recession do not change the fact that a contract did exist." *Katz v. Van Der Noord*, 546 So.2d 1047, 1049 (Fla.1989). Taylor was a valid director and officer of Phoenix until the company removed him. The insured v. insured exclusion applies if Taylor was at any time a duly elected or appointed officer. Because Taylor's status as a director and officer of Phoenix was at most voidable, he is a director and officer for the purposes of the Genesis policies.

■ Therefore, the Court finds that Taylor is a former director and officer of Phoenix and thus an "insured" according to the definition contained in the Genesis policies.

*2. Is Collusion Required for the Insured v. Insured Exclusion to Apply?*

With this objection, Plaintiffs raise issues regarding the purpose for which the insured v. insured exclusion was developed and its rightful application. They acknowledge that enforcement of the exclusion based on the present facts and circumstances appears to be an issue of first impression in Florida and the Eleventh Circuit. In lieu of case law from Florida or the Eleventh Circuit, Plaintiffs cite several district court cases which found that the purpose of the insured v. insured exclusion is to prevent collusive suits, and the courts have refused to enforce the provision when the plaintiff and defendant

are clearly adversarial. *See In re Buckeye Countrymark, Inc.*, 251 B.R. 835 (Bkrtcy. S.D.Ohio 2000); *American Cas. Co. v. F.D.I.C.*, 791 F.Supp. 276 (W.D.Okla.1992); *Fidelity and Deposit Company of Maryland v. Zandstra*, 756 F.Supp. 429 (N.D.Cal.1990). They also cite cases from the Third and the Seventh Circuit Courts of Appeals that have dealt with the purpose and application of the exclusion, but which have reached different conclusions.[6]

In a wrongful discharge action, *Township of Center v. First Mercury Syndicate, Inc.*, 117 F.3d 115 (3d Cir.1997), the public officials' claims made liability policy defined an insured as "all persons acting within the scope of their duties who were, now are, or shall be lawfully elected or lawfully appointed officials." Because the policy at issue in *Township of Center* was a claims made policy, the issue was "whether it is determinative for coverage that the person who suffered from the alleged wrongful act was also covered by the policy at the time of the wrongful act." *Id.* at 118.

The Court determined that under a claims made policy, the status of the party in the insured v. insured context must be made at the time the claim is made. *Id.* Because none of the ex-employee plaintiffs in the underlying action were employed by the Township at the time the claims were made, the Court concluded that the insured v. insured exclusion did not apply.

In support of its decision, the Court examined the policy underlying the insured v. insured exclusion. Stating that the primary focus of the exclusion was to prevent friendly suits in which an insured company might seek to force its insurer to pay for the poor business judgment of its officers or managers, the Court traced the history of the exclusion to the mid–1980's when a wave of litigation arose as corporations tried to use their D & O policies to recoup operational losses. *Id.* at 119. However, it noted that where it was clear that the underlying action was not collusive, the exclusion was often not enforced. *Id.*

Thus, the Court concluded that because the focus in *Township of Center* was on the nature of the underlying suit, the relevant time period for determining the status of the insured for purposes of the exclusion was when the claim was made. Since there was no evidence of collusion, and the plaintiffs in the underlying action were not still employed by the defendant at the time the claim was made, the exclusion did not apply. *Id.*

In the other appellate court decision considering the insured v. insured exclusion, Judge Posner provided a thoughtful analysis of the provision in *Level 3 Communications, Inc. v. Federal Insurance Company*, 168 F.3d 956 (7th Cir.1999). There, Defendant was sued in 1994 by six of its minority shareholders for securities fraud and related torts. *Id.* at 957. Six

**6.** The Ninth Circuit appears to be the only other federal appellate court to have discussed the insured v. insured exclusion in *American Medical International, Inc. v. National Union Fire Insurance Company of Pittsburgh*, 244 F.3d 715 (9th Cir.2001). In that case, the Court distinguished *Township of Center* because the policy in question specifically defined the parties in terms of the "scope of their official duties." *Id.* at 723. The conclusion that a role-based interpretation was intended by that policy was therefore understandable. *Id.* Moreover, the Court noted that the exclusion in that policy referred generally to claims by an "insured," whereas the language in the *American Medical* contract specifically identified claims by "past directors" as outside the policy's coverage. *Id.* Thus, the Court concluded, there was no ambiguity in *American Medical*, as there was in *Township of Center* as to whether the exclusion applied to suits by individuals who were not insured at the time they filed suit, although they had been earlier. *Id.*

months later another plaintiff who had, until June 1991, been a director of one of Defendant's subsidiaries joined the suit. *Id.* The insurance contract excluded liability for any claim "brought or maintained by or on behalf of any Insured." "Insured" was defined to include "a person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization." *Id.*

The Defendant asked the Court to read the insured v. insured exclusion in light of its purpose. Judge Posner defined such purpose "to exclude coverage of collusive suits that attempt to turn liability insurance into business-loss insurance and suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling." *Id.* at 958. In addressing Defendant's request, Judge Posner pointed out that:

> The fallacy in the argument is in confusing a rule with its rationale, or in turning a rule into a standard by reference to its rationale. There is a tradeoff between clarity and ease of application, on the one hand, and a tight fit between a legal or contractual norm and its purpose, on the other. A simple flat rule is deliciously easy to apply, but it may be both underinclusive or overinclusive in relation to the purpose that animates it. A standard, like "no coverage for collusive suits or lovers' quarrels" is contoured exactly to its purpose, but it cannot be applied without a potentially costly, time-consuming, and uncertain inquiry into the nature of the nature of the underlying suit to be covered. It is apparent from the wording they chose that the parties opted for the rule, not the standard, in agreeing to the "Insured versus Insured" exclusion. *Id.*

Judge Posner acknowledged that there might be situations where the application of the insured v. insured exclusion could be "too nutty" to be tolerable as a contractual interpretation despite its literal accuracy, *e.g.* when a unnamed class member with a $10 stake in the outcome of the suit who resigned as a director 20 years ago caused a loss of coverage. *Id.* at 959. However, he stated that it did not follow that the rule barring coverage when an insured is suing another insured collapses into a standard that would require the district court to inquire into the collusive potential of the securities suit or the bitterness of feelings between plaintiffs and the defendant in that suit. *Id.* In finding that the insured v. insured exclusion applied in *Level 3 Communications,* the Court concluded:

> It is one thing to carve a hard-edged exception, necessary to avoid absurdity; . . . it is another thing to replace the hard-edged rule of *"Insured vs. Insured"* with a mushy, messy standard that would be hell for an insurance company to apply when asked to indemnify its insured. A rule plus exceptions is not the equivalent of a standard. *Id.*

While upholding the insured v. insured exclusion in *Level Three Communications,* the Court refused to find, under the facts of the case, that the presence of one insured invalidated all coverage under the policy. Noting that the former director had joined the suit six months after it had been filed, the court determined that to deny all coverage would produce the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it." *Id.* at 960. As a result, coverage was barred only for the portion of the settlement that was received by the former director. *Id.* at 961.

Although Plaintiffs urge the Court to adopt the finding in *Township of Center,* Plaintiffs also ask that if the Court finds the logic in *Level 3 Communications* more

persuasive, Taylor's share of the settlement proceeds should be segregated and Defendant should be required to provide coverage for all of the other claims and costs.

Defendant responds by emphasizing the factual differences between *Township of Center* and *Level 3 Communications* and the instant case. It also cites a number of district court cases that have upheld insured v. insured exclusions when the underlying suit was not collusive. *See e.g. Voluntary Hospitals of America, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA.*, 859 F.Supp. 260 (N.D.Tex.1993), aff. 24 F.3d 239 (5th Cir. 1994); *Foster v. Kentucky Housing Corp.*, 850 F.Supp. 558 (E.D.Ky.1994); *Evanston Ins. Co. v. FDIC*, 1988 U.S. Dist. LEXIS 16263 (C.D.Cal. May 13, 1988).

In distinguishing *Township of Center*, Defendant notes that the policy at issue in that case excluded coverage for claims by an "insured" against another "insured," and the policy's definition of "insured" was limited to employees "acting within the scope of their official duties." Since the underlying claim was a wrongful termination action, by definition at the time plaintiffs brought their claim, they could not have been "acting within the scope of their official duties." Therefore, as the court noted, they were no longer "insureds."

Defendants point out that in the instant case, the insured v. insured exclusion is not limited to employees acting within the scope of their official duties. It applies to any claim made by, or with the assistance of, any director or officer of Phoenix, including former directors such as Taylor. Thus, Defendant argues, the court's reasoning in *Township of Center*, has no bearing on this case, and the issue of Taylor's status when the first court action was filed is irrelevant to the insured v. insured exclusion in the Genesis Policies.

The Court agrees that *Township of Center* is too factually distinguishable from the instant case to be dispositive. To some extent, the legal analysis of the purpose and application of the insured v. insured clause contained in *Level 3 Communications* is persuasive. It recognized that the original rationale underlying a legal or contractual norm does not provide a legal straightjacket. The parties may choose, for the sake of clarity and ease of application, to expand or broaden the rule beyond its underlying rationale. In the instant case, as in *Level 3 Communications*, the parties chose to do just that.

Similarly to the facts in *Level 3 Communications*, the Plaintiffs in this case were sophisticated insureds. They were quite able to read the insurance contract and see the exclusionary language. At the time of the contract negotiations, Plaintiffs already knew that Taylor had been fired for his fraudulent misrepresentations to Phoenix, although they did not share that information with the Defendant. They obviously never expected that Taylor would initiate a securities claim against them, but they accepted that risk when they agreed to the insured v. insured exclusion.

However, there are factual distinctions between the *Level 3 Communications* case the instant case that make the holding in *Level 3 Communications* inapplicable to the instant case, as Defendant argues. First, in *Level 3 Communications*, the initial suit was brought by six shareholders, none of whom was a current or former director or officer of the insured company. It was not until six months later that a former director joined the suit. As previously stated, the court expressly noted that it sought to avoid the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it." *Id.* at 960. Here, it was Taylor, the former offi-

cer and director, who initially filed the suit and, as such, the claim was uncovered from its inception. Therefore, it is Plaintiffs who seek to convert the suit's status to one of coverage under the policy based on the joinder of additional plaintiffs.

Second, the insured v. insured exclusion in *Level Three Communications* precluded coverage for claims "brought or maintained by or on behalf on any Insured." *Id.* at 957. However, that policy had no language precluding coverage for claims brought by security holders at the instigation of, or with the assistance or participation of, a director or officer. In contrast, the Genesis policies contain precisely that language, and the instant action is just such a claim. By publishing notice over *Business Wire* soliciting other Phoenix securities holders to contact Taylor's attorney, Taylor, who had been a duly elected officer of Phoenix, instigated, assisted, and participated in the amended class action securities claim that was filed on May 5, 2000. Accordingly, Defendant should not be limited to excluding coverage only for Taylor's claim. Under the express terms of the policy applied to the facts of this case, the insured v. insured exclusion should bar Plaintiffs' claim in this case in its entirety.

■ Thus, the lack of collusion in the underlying suit does not bar the application of the insured v. insured exclusion in the instant case, and the exclusion covers the claims of all the plaintiffs in the instant securities suit.[7]

*3. Did Genesis Have a Duty to Defend?*

■ Plaintiffs argue that Genesis had a duty to defend Plaintiffs on the securities claim action filed by Taylor. They assert that the duty to defend is much broader than the duty to indemnify and that there are times when an insurer must defend even if the insurer does not have to indemnify the insured. Plaintiffs base this argument on a line of Florida cases which have held that the duty of an insurer to defend is determined solely by the allegations of the complaint against the insured and that an insurer must defend a lawsuit if the underlying complaint, when fairly read, alleges facts which create potential coverage under the policy. *See McCreary v. Florida Residential Property and Casualty*, 758 So.2d 692 (Fla. 4th DCA 1999); *Fun Spree v. Orion Ins. Co.*, 659 So.2d 419 (Fla. 3d DCA 1995).

Plaintiffs note that nowhere in the original complaint did Taylor assert that he was a former director or officer. Therefore, they maintain that the insured v. insured exclusion does not apply, and based solely on the allegations of the complaint, the Defendant had a duty to defend them in the underlying securities claims action.

Additionally, Plaintiffs contend that none of the other class plaintiffs or potential class members knew Taylor or his background with Phoenix. Further, Taylor did not set forth any allegations that would establish that he, as a former director or officer, had any knowledge that would assist in the prosecution of the claims in the securities claims action. At the time Defendant denied coverage, the class had not been certified in the securities claims action.[8] Taylor, therefore, could not act on behalf of the remaining class members, and Plaintiffs contend entitlement to all of their defense fees and

---

7. The Court does not opine whether an individual non-officer or director may file a separate suit.

8. According to the language in the insured v. insured exclusion, even if Taylor had been the sole Plaintiff, because he had been a former officer and director, Defendant would have been justified in denying coverage.

costs incurred in the securities claims action.

Defendant responds by noting that neither of the policies it issued to Phoenix were policies to defend. Each policy specifically provides in the first paragraph of its declarations page: "THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE INSURED UNDER THE POLICY." Prospectus Liability Policy, Declarations; D & O Policy, Declarations. Each policy also states that "[i]t shall be the duty of the DIRECTORS AND OFFICERS and not the duty of the INSURER to defend CLAIMS..." Prospectus Liability Policy, Section VI, Costs of Defense and Settlements; D & O Policy, Section VI, Costs of Defense and Settlements. Accordingly, Defendant maintains that it had no duty to defend the underlying securities claims action.

Additionally, Defendant disputes Plaintiffs' contention that Florida law forbids an insurer from considering any information outside the complaint in determining whether it has a duty to defend and argues that such a rule, if applied rigidly, would lead to bizarre results. For support it cites *Rowell v. Hodges*, 434 F.2d 926 (5th Cir.1970),[9] and *Nationwide Mutual Fire Insurance Co. v. Keen*, 658 So.2d 1101 (Fla. 4th DCA 1995). In *Rowell*, the court, applying Florida law, rejected the argument that insurers were bound by the allegations of the complaint. The court noted that "to say [that the insurer] must gauge its obligation strictly by the pleading called a Complaint, and put blinders on, so to speak, to what is actually knows and has definitely ascertained, is somewhat archaic, considering the nature of present system of notice pleading." *Rowell v. Hodges*, 434 F.2d at 930. Similarly,

in *Nationwide Mutual Fire Insurance Co. v. Keen*, 658 So.2d at 1102–1103, the court held that an insurer was not required to defend its insured where the insurer learned facts outside the complaint that negated coverage.

 It is well settled law in Florida that a liability insurer's duty to defend is controlled by the allegations in the complaint against the insured, even if the allegations are factually incorrect or without merit. *S.M. Brickell Limited Partnership v. St. Paul Fire and Marine Ins. Co.*, 786 So.2d 1204, 1206 (Fla. 3d DCA 2001)(citing *State Farm Fire & Cas.Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1077 n. 3 (Fla. 1998)). Any ambiguity in the complaint as to whether coverage is created must be construed against the insurance company. *See Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810 (Fla. 1st DCA 1985).

The case on which Defendant chiefly relies, *Nationwide Mutual Fire Insurance Company v. Keen*, 658 So.2d 1101 (Fla. 4th DCA 1995), is an apparent aberration and is factually distinguishable from the instant case. In *Keen*, the insured conceded to the insurance carrier before the complaint was filed a critical fact that placed any claim beyond coverage. That concession was backed by corroborated evidence. *Id.* at 1103. The complaint alleged nothing about this critical fact.

The court acknowledged the prevailing rule in Florida, but stated, "If uncontroverted evidence places the claim outside of coverage, *and* the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending."(emphasis added)

---

**9.** The Eleventh Circuit has adopted as binding precedent pre–1981 decisions of the former Fifth Circuit Court of Appeals. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

*Id.* The court also distinguished the case before it from a situation in which there was an honest dispute between the insured and the carrier over the critical coverage fact. *Id.*

In the instant case, unlike the *Keen* case, the underlying complaint against Plaintiffs alleged facts that would have required coverage under Defendant's policies but for the exclusionary clause. As Plaintiffs have pointed out, the Defendant's rationale for invoking the exclusionary clause was premised on information it acquired outside of the complaint. Based just on the allegations of the complaint, Defendant had no basis upon which to refuse to defend Plaintiffs.

■ However, Florida also recognizes a distinction between the duty to defend and the duty to indemnify. In a case involving insurance on leased automobiles, the Florida Supreme Court noted that the duty to defend has no roots in the common law. It is purely a statutory or contractual duty. *Allstate Insurance Company v. RJT Enterprises, Inc.,* 692 So.2d 142, 145 (Fla.1997). The Court found that in the absence of an express statutory or contractual duty to defend, there is no such duty. *See also Budget Rent A Car Systems, Inc. v. Taylor,* 626 So.2d 976, 978–79 (Fla. 4th DCA 1993)(duty to defend is purely contractual...if there is no duty to defend in the parties' contract, then there is no duty to defend)

In different contexts, several federal courts interpreting Florida law have come to the same conclusion. *See National Union Fire Insurance Company of Pittsburgh, P.A. v. Brown,* 787 F.Supp. 1424, 1430 (S.D.Fla.1991), *aff'd* 963 F.2d 385 (11th Cir.1992)(clause in officers' and directors' policy which relieved insurer of any duty to defend insureds meant that insurer was not required to initiate defense of litigation against insureds...however, no duty to defend clause did not mean that insurer was relieved of its obligations to pay insureds' defense costs); *PT Indonesia Epson Industry v. Orient Overseas Container Line, Inc.,* 2002 WL 561376 (S.D.Fla.2002)(duty to defend does not arise where the language of policy explicitly reserves the right of the insurer to refuse to defend the insured); *Rodriguez v. American Ambassador Casualty Co.,* 4 F.Supp.2d 1153 (M.D.Fla.1998). *See also Couch on Insurance* 3d § 200:5.

In the instant case, as Defendant has pointed out, both policies state clearly that the Defendant has no obligation to defend Plaintiffs. Accordingly, the Court determines that Defendant had no duty to provide a defense for Plaintiffs.

*4. Does Plaintiffs' Expectation of Coverage Preclude Summary Judgment?*

■ Plaintiffs contend that their expectation of coverage alone is sufficient to preclude summary judgment. In support of this position they cite *American Cas. Co. v. FDIC,* 677 F.Supp. 600(N.D.Iowa 1987). In *American Cas. Co. v. FDIC,* the Court found that a factual issue existed as to whether the exclusion precluded the reasonable expectations of the officers and directors. *Id.* at 605. Accordingly, it concluded that summary judgment was inappropriate. *Id.*

The Florida Supreme Court has specifically rejected the doctrine of reasonable expectations. In *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Company,* 711 So.2d 1135, 1140 (Fla.1998), the Court stated:

> We decline to adopt the doctrine of reasonable expectations. There is no need for it if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer. To apply the doctrine to an unambiguous provision would be to rewrite the contract and the basis on which premiums are charged...Construing insurance policies

upon a determination as to whether the insured's subjective expectations are reasonable can only lead to uncertainty and unnecessary litigation.

Accordingly, the Court finds that there is no legal basis under Florida law for Plaintiffs' claim that their reasonable expectations of coverage preclude summary judgment in the instant case.

*5. Is the Insured v. Insured Exclusion Ambiguous?*

Plaintiffs make two arguments under this section in opposition to Defendant's motion for summary judgment. First, they argue that the insured v. insured exclusion is so broad that it, in effect, "swallows up" the entire insurance policy. Plaintiffs maintain that when read as construed by Genesis, the exclusion takes back the very coverage that it grants to Plaintiffs. Since any derivative action is necessarily a claim on behalf of the company, Plaintiffs assert that the insured v. insured exclusion effectively eliminates coverage for all derivative claims.

Second, Plaintiffs contend that the breadth of Defendant's exclusion renders the policy patently ambiguous, and therefore it must be construed against Defendant. Plaintiffs argue that insured v. insured exclusion is ambiguous when it seeks to exclude coverage for claims of past directors who could not have been involved, or even insured, in regard to the misconduct giving rise to a securities claim. Defendant seeks to enforce the exclusion because Taylor, who was a former director and officer of Phoenix, brought, solicited or participated in the securities claim action.

Plaintiffs note that Taylor was not associated with Phoenix at the time the Genesis policies were purchased by Plaintiffs. Moreover, Taylor did not sue on any acts or omissions that occurred during his association with Phoenix. Therefore, Plaintiffs argue, the fact the Genesis policies are

claims made policies, coupled with the fact that Defendant attempts to exclude coverage based on actions of a person who was not even with Phoenix when the policies were purchased, renders the insured v. insured exclusion ambiguous.

 Under Florida law, when a term in an insurance policy is ambiguous, the court must construe it in favor of the insured and against the insurer. *Continental Casualty Company v. Wendt,* 205 F.3d 1258, 1261 (11th Cir.2000)(citing *Davis v. Nationwide Life Ins. Co.,* 450 So.2d 549, 550 (Fla. 5th DCA 1984)). Policy exclusions are construed even more strictly against the insurer than coverage clauses. *Buckhalter v. Commercial Union Insurance Company,* 787 So.2d 949, 950 (Fla. 2d DCA 2001). An insurance contract is deemed ambiguous if it is susceptible to two or more reasonable interpretations that can be fairly made. *Continental Casualty Company,* 205 F.3d at 1261. However, ambiguity is not invariably present when a contract requires interpretation, and the mere failure to define a term involving coverage does not necessarily mean the term is ambiguous. *Id.* at 1262. Policy exclusions are only deemed ambiguous when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.,* 711 So.2d 1135, 1138 (Fla.1998).

 In the instant case, the insured v. insured clause in the Genesis policies is not ambiguous. While the Plaintiffs might think it is unfair or unreasonable to exclude coverage based on the suit of a former director and officer who was no longer with the company when the insurance policies were issued and who was not involved with the acts or omissions sued upon, there is nothing unclear or uncertain about the language of the exclusion. As noted previ-

ously, the insureds were sophisticated businessmen who clearly understood how to read a contract. If they did not like the provisions of the insured v. insured exclusion, they could have attempted to negotiate more favorable terms or looked for coverage with another carrier.

The insured v. insured exclusion does not "swallow up" the entire policy. A large number of shareholder suits are not brought by or with the assistance of an officer or director. The exclusion would not apply to those cases. Additionally, the insured v. insured exclusion states that derivative claims are covered as long as they are not brought with the solicitation, assistance, active participation or intervention of any officer or director or the Company.

 Although shareholder derivative suits are brought on behalf of the company, that legal fiction does not change the fact that the suit is actually being brought by shareholders. A reasonable reading of the insured v. insured clause clearly shows that shareholder derivative suits are not excluded from coverage unless there is some active participation of an officer, director or the Company in the suit. *See Thomas v. Prudential Property and Casualty*, 673 So.2d 141, 142 (Fla. 5th DCA 1996)( "While it is true that an ambiguity may exist in an insurance policy when the terms of the contract are subject to different interpretations—one of coverage and one of exclusion—our courts should not put strain and unnatural construction on the terms of the policy in order to create uncertainty or ambiguity."); *Voluntary Hospitals of America, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA.*, 859 F.Supp. 260 (N.D.Texas 1993), *aff.* 24 F.3d 239 (5th Cir.1994).

### CONCLUSION

Based on the foregoing, the Court rules as follows:

1. Defendant Genesis Indemnity Insurance Company's Motion to Dismiss, or in the Alternative for Summary Judgment and Supporting Memorandum of Law (Doc. No. 26) is GRANTED. Summary judgment is entered in favor of Defendant Genesis.

2. Plaintiffs' Unopposed Motion for an Enlargement of Time to File a Memorandum of Law in Opposition to Defendant Genesis Indemnity Insurance Company's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. No. 33) is DENIED AS MOOT.

3. Defendant Genesis Indemnity Insurance Company's Motion for Leave to File a Reply Memorandum or, in the Alternative, for Oral Argument (Doc. No. 45) is DENIED.

4. Plaintiffs' Motion to Strike Defendant, Genesis Indemnity Insurance Company's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Incorporated Memorandum of Law is (Doc. No. 52) is DENIED.

5. Plaintiffs' Dispositive Motion for Partial Summary Judgment Against Genesis Indemnity Insurance Company and Request for Oral Argument With Memorandum of Law in Support Thereof (Doc. Nos. 68 and 69) are DENIED.

6. Joint Request for Referral to Magistrate (Doc. No. 85) is DENIED.