[605 NYS2d 248]

In the Matter of the Arbitration between DONALD J. TRUMP, Appellant, and REFCO PROPERTIES, INC., et al., Respondents.

First Department, December 16, 1993

## APPEARANCES OF COUNSEL

*Jay Goldberg (John A. Kornfeld* and *Joshua F. Scheier* with him on the brief), for petitioner.

*Julian W. Friedman* of counsel *(Laura D. Weinstein* with him on the brief; *Stillman, Friedman & Shaw, P. C.,* attorneys), for Refco Properties, Inc., respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

This appeal, from the denial of a petition to stay arbitration, presents the issue of whether a clause in a partnership agreement providing for arbitration of a dispute pertaining to a partner's call for additional capital takes precedence over another clause in the agreement requiring the approval of 65% of the partnership interests before a management decision affecting the partnership can be made so as to require arbitration of the call notice dispute where the other partner, a 50% owner of the partnership interests, has never agreed to the improvements and renovations for which the additional capital contribution is sought.

The essential facts are not in dispute. Regency-Lexington Partners, a general partnership which owns the Grand Hyatt Hotel in Manhattan, consists of two 50% partners, petitioner Donald J. Trump and respondent Refco Properties, Inc. The hotel is operated by the Hyatt Corporation, an affiliate of Refco, both of which are owned by the same holding corporation. Since its renovation and opening in September 1980, the Grand Hyatt, the former Commodore Hotel, has been operated as a first-class convention hotel.

Refco's and Trump's rights and obligations with respect to the partnership are governed by an October 7, 1977 agreement, two provisions of which are of particular significance to the issue before us. Section 6.1 (b), relied upon by Refco, entitled "Additional Capital Contributions," sets forth the

procedure for securing additional capital, providing in relevant part:

"(iii) If at any time and from time to time the Partnership shall require additional monies (the 'Additional Capital') in excess of the Initial Capital Contribution, either Partner (the 'Requesting Partner') shall so notify (the 'Call Notice') the other Partner (the 'Other Partner'). Within fifteen (15) days following the giving of the Call Notice, the Other Partner shall elect by notice to all Partners to (A) make a contribution equal to its Pro Rata Share of the Additional Capital (the 'Additional Capital Contribution') or (B) not to make the Additional Capital Contribution or to make a portion thereof (the 'Lesser Portion'), in which latter event the provisions of subparagraph (iv) of this Section shall apply.

"(iv) In the event the Other Partner shall elect not to make the Additional Capital Contribution or to make the Lesser Portion as provided in (B) above, and provided the Requesting Partner shall have made its Pro Rata Share of the Additional Capital Contribution or have made reasonable arrangements for the payment of the same to the Partnership, the Requesting Partner * * * may demand arbitration as to whether and to what extent the Disputed Amount, as hereinafter defined, shall be paid to the Partnership as of the giving of the Call Notice. 'Disputed Amount' shall mean the Additional Capital Contribution specified in the Call Notice (less any Lesser Portion made by the Other Partner)".

Other than this narrowly tailored provision relating to a specifically defined dispute, the partnership agreement does not contain any arbitration provision.

Section 5.1, entitled "Management," provides: "All decisions affecting the business and affairs of the Partnership, including but not limited to, the development, financing, refinancing, sale or leasing of the Property, and all matters arising under this Agreement shall require the consent of Partners holding in the aggregate not less than 65% of the Pro Rata Interests, as hereinafter defined, subject to terms of this Agreement." Pro rata interests, according to the agreement, refers to each partner's 50% partnership interest, which is subject to adjustment by additional pro rata share(s) acquisition. A partner may acquire an additional pro rata share in the partnership based on the other partner's default in making a capital contribution.

The present dispute has its origins in a decision by Refco, to

which Trump, the holder of 50% of the partnership's pro rata interests, has not agreed, to embark upon a major capital improvement of the Grand Hyatt and convert it from a convention to a luxury hotel. The improvements would include the installation of a health club, renovation of the hotel's ballroom and conference facilities and its existing restaurants and the refurbishment of its guest rooms and corridors. Apparently after discussions between Refco and Trump and the banks to which he has purportedly pledged his partnership interest proved fruitless, Refco, on June 23, 1992, issued a call notice asserting that the partnership required $35,660,000 in additional capital to make certain "capital improvements and renovations to the Hotel" and that Trump's pro rata share was $17,830,000. The call notice contained an itemized list of the improvements and renovations contemplated, as well as the projected cost of each project. In a July 11, 1992 response, Trump refused to make any additional capital contribution and, citing section 5.1 of the partnership agreement, contested the call notice as a sham calculated, *inter alia,* to dilute his equity interest in the partnership.

Refco thereafter, by July 17, 1992 notice, served its demand for arbitration seeking a determination that the partners should make an additional capital contribution of $35,660,000 and that Trump was responsible for one half of that amount. Six days later, Trump commenced this proceeding to stay the arbitration on the ground, *inter alia,* that Refco was seeking an arbitral determination of a management decision, i.e., the investment of over $35,000,000 to upgrade the Grand Hyatt to a luxury accommodation, which should be determined by agreement of 65% of the partnership's pro rata interests, not arbitration. Refco cross-moved to dismiss the petition, citing the unrestricted scope of the arbitration clause contained in section 6.1 (b), the absence in section 5.1 of any exception to that broad agreement to arbitrate and section 5.1's "subject to" language, negating the creation by implication of any such exception. The IAS Court, reading section 5.1 to exclude from management decisions those which involve the outlay of money in excess of the partners' Initial Capital Contribution and construing the "subject to" clause of that section to subordinate the 65% approval provision to all the other terms of the agreement, denied the stay and granted Refco's cross motion to dismiss. We reverse and grant the petition to stay arbitration.

It is a well-settled principle of law in this State that a party cannot be compelled to submit to arbitration unless the agreement to arbitrate "expressly and unequivocally encompasses the subject matter of the particular dispute." *(Bowmer v Bowmer,* 50 NY2d 288, 293-294.) Where, as here, there is no agreement to arbitrate "all disputes" arising out of the parties' relationship but, rather, a limited arbitration clause relating to a specific type of dispute, the clause "must be read conservatively" if it is subject to more than one interpretation. *(Gangel v N. DeGroot, PVBA,* 41 NY2d 840, 841.) Needless to say, if the particular claim sought to be arbitrated is outside the scope of a limited arbitration clause, arbitration should be stayed. *(Matter of County of Rockland [Primiano Constr. Co.],* 51 NY2d 1, 7.)

Section 6.1 (b) (iii) and (iv) of the partnership agreement must be read in conjunction with section 5.1, which required the approval of partners holding at least a 65% interest in the partnership with respect to "[a]ll decisions affecting the business and affairs of the [p]artnership, including but not limited to, the development, financing, refinancing, sale or leasing of the [hotel]." The plain purpose of section 5.1 is to ensure that major hotel projects and transactions are not undertaken in the absence of a consensus among the partners holding at least a 65% interest in the partnership. The IAS Court's ruling, however, eviscerates this bargained-for protection. As it construed the partnership agreement, arbitration is required whenever one of the partners makes a capital call, irrespective of whether that call was based on a decision requiring the approval of 65% of the partnership interests and irrespective of whether that approval has, in fact, been obtained. Thus, notwithstanding the parties' agreement that a 65% consensus is required with respect to decisions concerning the "development, financing, refinancing, sale or leasing of" the hotel, under the IAS Court's interpretation, Refco, without that consensus, is permitted to unilaterally decide that a major redevelopment of the property is needed and, through the device of a capital call, circumvent the requirement of approval by 65% of the partnership interests and seek to impose its will through arbitration. Refco could also, for instance, decide that a refinancing of the Grand Hyatt is in order and secure a refinancing agreement calling for the payment of a $5,000,000 fee and bypass section 5.1 of the agreement calling for 65% approval of decisions concerning

"refinancing" and, instead, issue a capital call for $5,000,000. Any disagreement over the need for refinancing would, under the IAS Court's interpretation, be resolved through arbitration.

Section 5.1 of the partnership agreement protects against such an eventuality by providing that with respect to matters such as the "development, financing, refinancing, sale or leasing of" the hotel, a 65% consensus among the partners was required before any action could be taken. The IAS Court, however, subordinated section 5.1 to the arbitration provision of section 6.1 (b) (iv), which is limited to the issue of the "Disputed Amount" following a rejected call notice, thereby vitiating the effect of section 5.1 in any case where a partner makes a unilateral management decision of the kind envisioned by section 5.1 followed by a call notice for an additional capital contribution. In resolving an alleged conflict between sections of a contract, courts should "adopt an interpretation which gives meaning to every provision of a contract." *(Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46.) A construction which renders a clause meaningless should be avoided. *(Supra.)*

In our view, however, there is no inconsistency between the management provisions of section 5.1 and the additional capital contributions provision of section 6.1 (b). A partner's right to issue a "Call Notice" for "Additional Capital" pursuant to section 6.1 (b) (iii) is a conditional one. It arises "[i]f at any time and from time to time the Partnership shall require additional monies (the 'Additional Capital') in excess of the Initial Capital Contribution." The issue of whether "the Partnership shall require additional monies" is, in the context of the call notice here—a request for additional capital to finance a major improvement in the hotel—and the circumstances presented, a partnership decision "affecting the business and affairs of the Partnership, including but not limited to, the development, financing, refinancing, sale or leasing of the Property", as to which there is no provision for arbitration but, rather, a consent requirement of partners holding not less than 65% of the partnership interests. In accordance with section 6.1 (b) (iv) of the partnership agreement, the only arbitrable issue is "whether and to what extent the Disputed Amount * * * shall be paid to the Partnership". Before reaching that question, there must first be a decision that the partnership requires additional monies, which is a manage-

ment decision for the partnership in accordance with section 5.1, not a matter for unilateral resolution.*

Finally, contrary to the IAS Court's interpretation, we do not find that the qualification "subject to terms of this Agreement" contained in section 5.1 affords any comfort to Refco's position. Rather than subordinating section 5.1 to section 6.1 (b), it merely reinforces the view that the separate provisions of the agreement must be read as part of a collective whole.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered October 28, 1992, which denied petitioner's application for a stay of arbitration and granted the cross motion to dismiss the petition, should be reversed, on the law, with costs and disbursements, the cross motion denied and the stay granted.

Ross, Kassal, Rubin and Nardelli, JJ., concur.

Order, Supreme Court, New York County, entered October 28, 1992, reversed, on the law, with costs and disbursements, the cross motion denied and the stay granted.

---

* Refco mischaracterizes the arbitration provision. One partner may not, as Refco asserts, "notif[y] the other partner that the Partnership requires additional capital"; as noted, the decision that the partnership requires additional capital may not be unilaterally determined. Nor is Refco correct in stating that the requesting partner "may demand arbitration as to whether and to what extent the additional capital contributions *are required.*" (Emphasis added.) The requesting partner may only demand arbitration "as to whether and to what extent the [additional capital contribution] *shall be paid.*" (Emphasis added.)