Terrence L. **BODEWES**, James A. Maloney, Ernest Bouchard, Vincent Fetes, Daryl Bodewes, James Biddle, Sr., George Ferraro and Thomas Herr, Plaintiffs,

v.

**ULICO CASUALTY COMPANY,** Defendant.

No. 01–CV–365C.

United States District Court, W.D. New York.

Sept. 25, 2004.

---

Boylan, Brown, Code, Vigdor & Wilson, LLP, Mark A. Costello, of counsel, Rochester, NY, for Plaintiff Terrence L. Bodewes.

Damon & Morey LLP, R. Scott DeLuca, of counsel, Buffalo, NY, for Plaintiffs James Biddle, Sr. and George Ferraro.

Cohen & Lombardo, P.C., Daniel J. Sperrazza, of counsel, Buffalo, NY, for Plaintiff Thomas Herr.

Shaw Pittman LLP, Daniel Aronowitz, of counsel, McLean, VA, for Defendant Ulico Casualty Company.

Levy Ratner, P.C., Jennifer Middleton, of counsel, New York City, for Amici Curiae Curtis Zamerski and Richard Kohl.

CURTIN, District Judge.

In this action, current and former Trustees of the Buffalo Carpenters Health Care Premium Benefit, Annuity & Pension Funds (the "Funds," or the "Plan") seek declaratory judgment pursuant to 28 U.S.C. § 2201 for the purpose of determining the rights and obligations of the parties to a Trustee and Fiduciary Liability Insurance Policy (the "Policy") issued by the Ulico Casualty Company ("Ulico"). The Court heard argument on the parties' cross-motions for summary judgment (Items 5, 10) on June 28, 2004. For the following reasons, Ulico's motion is denied, and the Trustees' motion is granted.

## BACKGROUND

On January 19, 2000, plaintiffs Thomas W. Burke,[1] Curtis Zamerski, and Richard Kohl, as Trustees of and/or participants in the Funds, brought an action (*Burke, et al. v. Bodewes, et al.*, No. 00–CV–65C, referred to herein as the "underlying action") pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, seeking equitable relief and damages for alleged breach of fiduciary duty by eight current and former Trustees of the Funds (referred to collectively herein as the "Trustees" or "defendant Trustees"). An amended complaint was filed on April 17, 2000, pursuant to this court's order of April 7, 2000, allowing plaintiffs to make certain insubstantial changes to the original pleading. In addition to the ERISA breach of fiduciary duty claims, the original and amended complaints also asserted claims against the Segal Company, the Funds' former actuary and consultant, pursuant to state common law for negli-

---

1. By stipulation and order signed by the court on October 25, 2001 (Item 123), Mr. Burke (the current Chair of the Pension Fund Board of Trustees) voluntarily withdrew his causes of action against the Fund Trustees, leaving Curtis Zamerski (current participant in the Fund) and Richard Kohl (participant in the Fund from 1961 to 1997, currently drawing a pension) as the named plaintiffs in the underlying action.

gence, professional malpractice, and misrepresentation, and the defendant Trustees asserted cross-claims against Segal for contribution and indemnity. In a decision and order dated June 21, 2002, this court dismissed the claims and cross-claims against Segal with prejudice upon approval of a settlement agreement entered by plaintiffs and Segal on May 10, 2002 (*see* No. 00–CV–65C, Item 150). Then, in a decision and order dated February 28, 2003, the court denied the motion for summary judgment made on behalf of four of the defendant Trustees, and allowed the plaintiffs to file a second amended complaint to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure (*see* No. 00–CV–65C, Item 175). The second amended complaint was filed in the underlying action on April 4, 2003.

In the meantime, between January 27, 2000 and February 17, 2000, each of the individual Trustee defendants (acting either on their own behalf or through counsel) sent a letter to Ulico giving notice of the claims and requesting that Ulico undertake defense of the underlying action pursuant to the terms of the Policy (*see* Item 7, Appx. 30–34). By letter dated February 28, 2000, counsel for Ulico notified all Trustee defendants that "the policies that Ulico issued to the [Funds] do not afford any coverage for the claims made in the Lawsuit ..." (Item 7, Appx. 35). This disclaimer letter explained Ulico's position that, although the Policy had expired on July 10, 1999, a letter dated May 14, 1999 from Owen Rumelt, special counsel to the Trustees, "potentially could afford coverage for future claims ..." (*id.* at page 2). In his May 14 letter, Mr. Rumelt advised Ulico that claims would likely be made under the Policy as the result of his law firm's investigation of the decline in the financial status of the Pension Fund (*see* Item 7, Appx. 24). The Ulico disclaimer letter went on to state that, notwithstand-

ing this notice of potential claims, coverage was precluded by Endorsement No. 2 of the Policy, which "expressly excludes coverage for any claim or allegation which, directly or indirectly, in whole or in part, arises out of assertions, allegations, causes of action or demands by or on behalf of an Insured"-namely, Mr. Burke, the current Chair of the Pension Fund Board of Trustees (Item 7, Appx. 35, page 2). The disclaimer letter also states that, apart from Endorsement No. 2, the Policy would not afford coverage for any claims in the underlying complaint which were not referred to in Mr. Rumelt's May 14, 1999 letter (*id.* at pages 2–3).

The defendant Trustees then answered the complaint, and alleged various third-party claims against Ulico seeking defense and indemnification under the Policy (*see, e.g.*, No. 00–CV–65C, Items 11, 16, 17, 24, 43). Defendants James Biddle and George Ferraro also asserted a breach of contract claim against Ulico for refusing to provide coverage (No. 00–CV–65C, Item 24). By order of this court entered upon approval of the parties' stipulation (No. 00–CV–65C, Item 101), the third-party claims against Ulico were severed from the underlying action to proceed and be tried separately as Civil No. 01–CV–365.

Ulico has moved for summary judgment (Item 5) seeking dismissal of the defendants' third-party complaints. Defendant Trustees Terrence L. Bodewes, Thomas Herr, James Biddle, Sr., and George Ferraro have cross-moved for summary judgment (Item 10) seeking an order requiring Ulico to assume defense of the underlying action and to reimburse them for defense costs and attorneys' fees incurred, in accordance with the terms of the Policy.

## DISCUSSION

### I. Standard for Summary Judgment

■ Summary judgment is properly granted "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997). In a dispute about the meaning of language in an insurance policy, a motion for summary judgment may be granted only where the policy language is unambiguous and conveys a definite meaning. *See Sayers v. Rochester Telephone Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993).

The interpretation of unambiguous provisions in an insurance policy is a question of law for the court, which (the parties agree) is to be determined under principles of New York law. *See Century 21, Inc. v. Diamond State Ins. Co.,* 2004 WL 1117897, at *2 (S.D.N.Y. May 18, 2004) (citing *Mazzuoccolo v. Cinelli,* 245 A.D.2d 245, 246–47, 666 N.Y.S.2d 621, 622–23 (1st Dep't 1997)). If the language is susceptible to different reasonable interpretations, and "where there is relevant extrinsic evidence of the parties' actual intent," then the meaning of the policy becomes an issue of fact precluding summary judgment. *Seiden Assocs. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992); *see also Hartford Accident & Indem. Co. v. Wesolowski,* 33 N.Y.2d 169, 172, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973).

The mere fact that the parties to an insurance policy assert opposing interpretations of the policy's provisions does not constitute an ambiguity precluding summary judgment. *Sayers,* 7 F.3d at 1095; *In re County Seat Stores, Inc.,* 280 B.R. 319, 324 (Bankr.S.D.N.Y.2002). Instead, where the parties disagree as to the proper interpretation of the policy language, the court should seek to determine the parties' intent by construing the policy as a whole. *Village of Sylvan Beach, N.Y.*

*v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir.1995). "By examining the entire contract, we safeguard against adopting an interpretation that would render any individual provision superfluous." *Sayers,* 7 F.3d at 1095 (citing *Two Guys from Harrison–N.Y., Inc. v. S.F.R. Realty Assocs.,* 63 N.Y.2d 396, 403, 482 N.Y.S.2d 465, 472 N.E.2d 315 (1984)).

Thus, where both parties contend that the policy language is clear and unambiguous, yet urge opposing interpretations of it, the court should adopt the interpretation "which gives meaning to every provision of [the policy]. A construction which renders a clause meaningless should be avoided." *Trump v. Refco Properties, Inc.,* 194 A.D.2d 70, 605 N.Y.S.2d 248 (1st Dep't 1993) (citation omitted), *leave to appeal denied,* 83 N.Y.2d 754, 612 N.Y.S.2d 108, 634 N.E.2d 604 (1994). When making this determination, the court should be guided by the "reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." *Bird v. St. Paul Fire & Mar. Ins. Co.,* 224 N.Y. 47, 51, 120 N.E. 86 (1918).

Ulico contends that it is entitled to summary judgment dismissing the third-party complaints against it because the claims in the underlying action are clearly and unambiguously excluded from coverage under either the "Insured vs. Insured" exclusion or the "Insufficient Contributions" exclusion contained in the Policy. The defendant Trustees contend that they are entitled to summary judgment granting the relief sought in their third-party complaints against Ulico-namely, that the clear and unambiguous policy language obligates Ulico (1) to undertake the defense of the ERISA breach of fiduciary duty claims made against the Trustees in the underlying action, and (2) to indemnify them against any damages that may be awarded on any of those claims.

## II. The Claims

As set forth above, the underlying complaint which Ulico was asked to defend was originally brought by Mr. Burke in his capacity as both Chairman of the Board of Trustees and a participant of the Fund, and by Fund participants Zamerski and Kohl, pursuant to sections 502(a)(2) and (3), 405(a), and 409(a) of the ERISA statute. Those sections provide as follows:

**Persons empowered to bring a civil action**

A civil action may be brought—

. . .

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

ERISA § 502(a)(2), (3); 29 U.S.C. § 1132(a)(2), (3).

**Circumstances giving rise to liability**

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

ERISA § 405(a)(1), (2), (3); 29 U.S.C. § 1105(a)(1), (2), (3).

**Liability for breach of fiduciary duty**

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA § 409(a); 29 U.S.C. § 1109(a).

In six separate causes of action, the plaintiffs in the underlying action alleged that the defendant Trustees failed to properly oversee the maintenance of the pension fund, in violation of the prudent person standard of care under the fiduciary duty provisions of ERISA § 404(a)(1)(B). That section provides:

**Prudent man standard of care**

(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

. . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

ERISA § 404(a)(1)(B); 29 U.S.C. § 1104(a)(1)(B). The plaintiffs also alleged

that the defendant Trustees failed to collect delinquent contributions to the Funds, which amounted to an extension of credit between the Plan and employees in violation of ERISA § 406(a)(1)(B). That section provides:

**Transactions between plan and party in interest**

. . .

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

. . .

(B) lending of money or other extension of credit between the plan and a party in interest. . . .

ERISA § 406(a)(1)(B); 29 U.S.C. § 1106(a)(1)(B).

### III. The Policy

Under Policy No. FLP–1800300, effective May 15, 1998 through May 15, 1999, Ulico agreed:

**Coverage A—Loss Payment and Claims Made Provision**

To pay on behalf of the Insureds any Loss, subject to the limits of liability, as the Insureds acting in their capacity as Trustees of employees of the Trust described in the Declarations, shall become legally obligated to pay as damages for claim or claims which are first made against the Insureds, during the Policy Period by reason of any Wrongful Act, as defined herein, committed or alleged to have been committed by the Insureds or any person retained by the Insureds, while acting in any capacity directly connected with such Trust provided further that the Insureds had no knowledge of such wrongful act prior to the effective date of the Policy.

(Item 7, Appx. 1, ¶ I). "Insureds" are defined as "the Trustees (including Past and Future) of the Trust . . . whether jointly or severally, while acting in their capacity as such" (*id.*, ¶ II(d)). "Loss" is defined as "the amount an Insured is legally liable to pay in satisfaction of claims insured hereunder, and shall include Claim Expenses, damages, judgments or settlements" (*id.*, ¶ II(f) & Endorsement No. 1). "Wrongful Act" is defined in the Policy as "any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the Insureds, either jointly or severally, in the discharge of their fiduciary duties, obligations or responsibilities, including the violation of any Federal fiduciary standards" (*id.*, ¶ II(e)). "Claim Expenses" are defined as:

(1) fees charged by an attorney designated by [Ulico] and (2) all other fees, costs or expenses incurred in the investigation, adjustment, defense and appeal of a claim if incurred by [Ulico] or an attorney designated by [Ulico], or by the Insureds with the written consent of [Ulico]. . . .

(*Id.*, ¶ II(c)).

This type of professional liability insurance policy, which Ulico refers to as a "Directors and Officers" ("D & O") policy, typically provides indemnification coverage to protect directors and officers from personal liability resulting from business decisions. *See generally* Joseph P. Monteleone & Nicholas J. Conca, *Directors and Officers Indemnification and Liability Insurance: An Overview of Legal and Practical Issues*, 51 THE BUSINESS LAWYER 575 (May 1996). The D & O indemnification policy ordinarily does not include any obligation that the insurer provide a defense, but instead "only addresses reimbursement of expenses incurred by the insureds in the defense." *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador*, 157 A.D.2d 293, 296, 556 N.Y.S.2d 549, 551 (1st Dep't 1990), *appeal dismissed*, 77 N.Y.2d 873, 568 N.Y.S.2d 915, 571 N.E.2d 85 (1991). As explained by the commentators:

[An] important feature of the D & O policy is its requirement that the insurer pay defense costs, but it does not impose upon the insurer the duty to defend its insureds. Typically, the policy language permits the insureds to select defense counsel, subject to the consent of the insurer.

D & O policies historically have not been written on a "duty to defend" basis due to the fact that the policies were intended to cover the very "brain trust" of the corporation and these individuals did not wish to have such delicate matters as their personal defense left to the control of an insurance company. While this results in the insurer losing some amount of control over the costs and conduct of the defense effort, it is generally relieved from any potential exposure as a result of hiring counsel who may subsequently be negligent in the defense of the insureds.

Monteleone & Conca, 51 THE BUSINESS LAWYER at 593.

■ As set forth above, the Trustee and Fiduciary Liability Insurance Policy at issue here does *not* contain a provision imposing a duty to defend upon Ulico. Instead, the coverage provisions in the Policy obligate Ulico to pay-subject to the Policy's $2,000,000.00 liability limit-any damages, judgments or settlements which the Trustees should become legally obligated to pay as the result of covered claims made against them, as well as attorneys' fees and other "claim expenses" incurred in defense of the claim, while reserving to Ulico the right of election to assume the defense of a claim at any time. However, cases interpreting the scope of the insurer's contractual duties under New York law have found "no relevant difference" between allegations that trigger an insurer's duty to defend and allegations that trigger an insurer's obligation to pay defense expenses. *Lowy v. Travelers Property and Cas. Co.*, 2000 WL 526702 (S.D.N.Y. May 2, 2000) (citing *Inglis v. Dundee Cent. School Dist. Bd. of Educ.*, 180 Misc.2d 156, 158, 687 N.Y.S.2d 866, 868 (Sup.Ct. Yates Co.1999) (applying standard that governs duty to defend to a case that concerns only payment of defense expenses)). Under the New York standard, an insurance company is required to pay an insured's defense expenses "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased." *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65–66, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991) (internal quotation marks and citations omitted); *see also Ruder & Finn, Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981) ("If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.").

Ulico has disclaimed coverage on the basis of the following exclusions contained in the Policy:

It is understood and agreed that coverage, as provided hereunder, specifically excludes any claim or allegation which, directly or indirectly[,] in whole or in part, arises out of any assertions, allegations, causes of action or demands whatsoever by or on behalf of an Insured or Insureds under this Certificate against another Insured or Insureds hereunder.

(Item 7, Appx. 1, Endorsement No. 2).

It is understood and agreed that coverage as provided hereunder shall not apply to any claim or allegation which directly or indirectly arises out of the bankruptcy, insolvency or inability of the Trust Fund to pay benefits due to insufficient contributions.

(*Id.*, Endorsement No. 4). Endorsement No. 2 is referred to as the "Insured vs.

Insured" exclusion, and Endorsement No. 4 is referred to as the "Insufficient Contributions" exclusion.

 Under New York law, the insurer seeking to invoke an exclusion provision in order to be released from its obligations under the policy has the burden to demonstrate that the "allegations of the complaint place that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974), *quoted in Technicon Elecs. Corp. v. Am. Home Assurance Co.*, 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989); *see also Employers Ins. of Wausau v. Duplan Corp.*, 899 F.Supp. 1112, 1119 (S.D.N.Y. 1995). Exclusionary clauses are strictly construed, and "are given the interpretation most beneficial to the insured." *M.H. Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir.1989); *see also State of N.Y. v. Blank*, 27 F.3d 783, 789 (2d Cir.1994). "The rule that insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability." *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir. 1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *see also Farr Man Coffee Inc. v. Chester*, 1993 WL 248799, at *40 (S.D.N.Y. May 28, 1993).

## A. Insured vs. Insured

Ulico's principal argument on these motions is that the "Insured vs. Insured"

exclusion set forth in Endorsement No. 2 precludes coverage for the ERISA breach of fiduciary claims asserted by the plaintiffs in the underlying action. According to Ulico, Thomas Burke, Chairman of the Board of Trustees of the Funds and clearly an "Insured" as that term is defined in the Policy, originally joined with Plan participants Curtis Zamerski and Richard Kohl to sue former and current Trustees, rendering the action at the outset one that was "brought by or on behalf of an Insured ... against another Insured or Insureds ...."[2]

The "Insured vs. Insured" exclusion is commonly found in Director and Officer liability insurance policies. *See Murray v. Loewen Group*, 133 F.Supp.2d 1110, 1117 (E.D.Wis.2001). The purpose underlying the exclusion is to prevent collusion, "such as suits in which a corporation sues its officers and directors in an effort to recoup the consequences of their business mistakes ..., thus turning liability insurance into business-loss insurance ...." *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956, 958 (7th Cir.1999); *see also Township of Center, Butler County, Pa. v. First Mercury Syndicate, Inc.*, 117 F.3d 115, 119 (3d Cir.1997) ("The primary focus of the exclusion is to prevent collusive suits in which an insured company might seek to force its insurer to pay for the poor business decisions of its officers or managers."). As explained in a recent article:

Insured vs. insured clauses are exclusions that preclude directors' and officers' insurance coverage when the dispute is between the corporation and its directors or officers. These exclusionary clauses became prominent after a

---

**2.** Ulico also argued in its motion papers that the Insured vs. Insured exclusion applies because any claim brought against the Trustees would inure to the benefit of the Funds, and would therefore be brought "on behalf of" an Insured. At oral argument, counsel advised the court that for Ulico has withdrawn this argument.

wave of litigation in the 1980s in which corporations attempted to recoup operational losses by filing claims against the director & officer policies. Thus, insured vs. insured exclusions are commonly thought to serve the purpose of preventing collusive litigation that results in insurance companies making up for a company's operational losses.

Catherine E. Vance & Geoffrey L. Berman, *Last in Line: Do "Insured vs. Insured" Exclusions Apply to Assignees in Assignments for the Benefit of Creditors?*, 23 AMERICAN BANKRUPTCY INSTITUTE JOURNAL 12 (February, 2004).

Significantly, D & O policies also commonly exclude ERISA claims. *See* Wayne E. Borgeest, *Directors and Officers Liability Insurance: a Primer*, 629 PRACTISING LAW INSTITUTE/LITIGATION 135, 155 (April, 2000). This is because, while ERISA claims raise legal liability issues for corporate managers, "... this fiduciary liability exposure is a relatively distinct risk which is covered under fiduciary liability insurance policies. When directors and officers act as fiduciaries, they are considered to be acting in a different capacity than that of directors and officers." *Id.*

It is beyond dispute that the "Trustee and Fiduciary Liability Insurance Policy" at issue in this case was designed to provide coverage for claims based on any actual or alleged breach of fiduciary duty by the Trustees, specifically "including the violation of any Federal fiduciary standards" such as those imposed by ERISA §§ 404(a) and 406(a). Ulico's characterization of the Policy as a "D & O Liability Policy," and its reliance on cases discussing the "Insured vs. Insured" exclusion as it applies to insurance coverage for corporate director and officer liability, is neither entirely accurate nor entirely helpful. Notably, no case has been cited or found in which an insurer has successfully excluded coverage for a claim of breach of ERISA

fiduciary duties based on an "Insured vs. Insured" exclusion in a trustee fiduciary liability policy.

The cases that have adjudicated coverage disputes involving the "Insured vs. Insured" exclusion have for the most part focused on the nature of the underlying suit to determine whether the insurer has met its burden of demonstrating that the allegations of the complaint place the claims squarely within the language of the exclusion, and have reached different conclusions. For example, in the *Township of Center* case cited above, town officials sought coverage under a "claims made" liability policy for a wrongful discharge action brought by three former town employees. The insurer relied on an "Insured vs. Insured" exclusion in its public officials' liability insurance policy to disclaim coverage. The Third Circuit found that the exclusion did not apply because none of the ex-employees in the underlying action were "insureds" at the time of the claims. In support of its determination, the court noted that the primary focus of the "Insured vs. Insured" exclusion was to prevent collusive (or "friendly") lawsuits, like those involved in the wave of litigation in the mid–1980's when corporations attempted to use their D & O policies to recoup operational losses. *Township of Center*, 117 F.3d at 119. However, the court also noted that, "[w]here ... it is clear that the underlying action is not collusive, the exclusion has not precluded coverage." *Id.* (citing cases).

In *Fidelity and Deposit Company of Maryland v. Zandstra*, 756 F.Supp. 429 (N.D.Cal.1990), the insurer relied on the "Insured vs. Insured" exclusion in a D & O liability policy to disclaim coverage for actions originally brought by a failed savings and loan association against its former officers and directors based on allegations of mismanagement, waste, fraud, and abuse.

The actions were later taken up by the Federal Deposit Insurance Corporation ("FDIC"), in its role as receiver. The court held that the "Insured vs. Insured" exclusion-which contained an exception for shareholder derivative actions-did not apply since the obvious intent behind the exclusion was to protect the insurer against collusive suits among the savings and loan and its directors and officers, and the actions for which coverage was sought clearly were not collusive. As stated by the court:

> While [the insurer] contends that the "insured v. insured" exclusion is not designed solely to protect it against collusive suits, it has come forward with neither evidence nor plausible argument to demonstrate that there was any other justification or purpose behind the exclusion. [The insurer]'s concern with collusive suits, in which an insured corporation might in essence seek to get [the insurer] to pay for its managers' mistakes or poor business decisions, is certainly a valid one, but it is not implicated here.

*Id.* at 431–32.

Somewhat closer to the mark is *QBE Intern. Ins. Ltd. v. Clark*, 2003 WL 22433117 (N.D.Ill. October 24, 2003). In that case, the liquidator of a failed workers' compensation trust brought a state court action against the former trustees for breach of fiduciary duties and negligence, and the trustees sought coverage under the D & O policy issued to the trust. The insurer brought an action in federal court seeking, among other things, a declaration that the "Insured v. Insured" exclusion in the policy precluded coverage of the claims asserted by the liquidator in the underlying state court lawsuit. In ruling in favor of coverage, the district court reasoned as follows:

> We conclude that the answer to whether the exclusion clause applies in this case must be found by looking at the nature of the claims that are being asserted, and applying the well-established principle that exclusion clauses are to be narrowly construed. The [breach of fiduciary duty] claims alleged by the Liquidator in . . . the underlying suit belong to both the Trust and the Trust participants. By definition, the exclusion clause bars coverage for claims brought by or on behalf of the Trust. This means that the intent of the Insurer . . . was to exclude coverage for claims that belong to and can be asserted on behalf of the Trust. The problem with applying the exclusion clause and effectuating that intent here is that to do so would throw out the baby with the bath water—that is, it would bar coverage of claims belonging to the Trust at the price of excluding coverage for claims belonging to participants that were not intended to fall within the exclusion. That would have the effect of expanding the scope of the insured v. insured exclusion, and thus would contravene the well-settled principles of Illinois law that exclusion clauses must be narrowly construed.

*Id.*, 2003 WL 22433117, at *17 (citing Illinois cases).

Like the situation in *QBE*, the underlying ERISA claims here belong to both the Trustees and the Plan participants. According to Ulico, the "Insured vs. Insured" exclusion bars coverage for claims brought by or on behalf of the Trustees. This would lead to the conclusion that Ulico intended to exclude coverage for ERISA claims that belong to and can be asserted by the Trustees, or any of them, in their capacity as fiduciaries. As in *QBE*, applying the exclusion and effectuating that intent here would bar coverage for claims assertable by Plan fiduciaries at the price of excluding coverage for claims belonging to Plan participants that were not intended to fall within the exclusion. This would

have the effect of expanding the scope of the "Insured v. Insured" exclusion, in contravention of the well-settled principle of New York law that exclusion clauses must be narrowly construed.

In addition, in this case the underlying ERISA action is not "collusive" litigation brought for the purpose of imposing upon the insurance company the responsibility of making up for the Funds' operational losses. To the contrary, it is beyond dispute that the underlying action was brought by persons authorized under the ERISA statute (*i.e.*, Plan participants and fiduciaries) to maintain a civil action seeking recovery of any losses to the Funds resulting from any Trustee's breach of enumerated fiduciary duties, and that the interests of the parties to that action are "genuinely adverse." *Zandstra*, 756 F.Supp. at 432. It is also beyond dispute that the Policy specifically provides coverage for any losses that the Trustees shall become legally obligated to pay as damages for the violation of ERISA's fiduciary standards. To interpret the language of the Policy's "Insured vs. Insured" exclusion to deny coverage for the ERISA fiduciary claims against the Trustees in the underlying action "would thwart the intentions and purposes of the contracting parties." *Conklin Co., Inc. v. National Union Fire Ins. Co.*, 1987 WL 108957, at *3 (D.Minn.1987).

This is true notwithstanding the fact that Mr. Burke was Chairman of the Board of Trustees at the time he (and Plan participants Zamerski and Kohl) filed the original action, or that the action was brought "on behalf of" the Funds. As explained by counsel for *amici curiae*

Zamerski and Kohl, Mr. Burke appeared as a named plaintiff in the original complaint in order to maintain standing to prosecute separate causes of action against the Funds' former actuary, the Segal Company. When the plaintiffs settled with the actuary, Mr. Burke withdrew as plaintiff, discontinuing any claims he may have had against the defendant Trustees. In any event, even if the presence of Mr. Burke as a plaintiff at the time of the original pleading could be construed to bar coverage for any claims by a Trustee against other Trustees, it does not follow that coverage would also be barred for the claims brought by Zamerski and Kohl as participants. *Cf. Level 3 Communications*, 168 F.3d at 960–61 (refusing to find, under the facts of the case, that the presence of one insured invalidated all coverage under the policy).

Ulico argues that, because the Policy is a "claims made" policy with a bargained-for "Insured vs. Insured" exclusion, the presence of an insured as an injured party as of the time the claim was made negates coverage for all claims, even those made by Zamerski and Kohl (who are indisputably *not* "insureds" under the Policy). Ulico relies on the holding in *PowerSports, Inc. v. Royal & Sunalliance Ins. Co.*, 307 F.Supp.2d 1355 (S.D.Fla.2004), which in turn cites *Level 3 Communications* and *Sphinx International, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 226 F.Supp.2d 1326 (M.D.Fla.2002), as "[t]he only cases addressing the question of whether the presence of an insured plaintiff defeats coverage for the entire action . . . ." *PowerSports*, 307 F.Supp.2d at 1359.[3]

3. *PowerSports* also cites *Bernstein v. Genesis Ins. Co.*, 90 F.Supp.2d 932 (N.D.Ill.2000), as another example of a case in which the court addressed the question of whether the presence of an insured plaintiff defeats coverage for the entire action. However, *Bernstein* did not directly involve the application of an "In-

sured vs. Insured" exclusion in the context of an action brought against an insured entity by both insured and uninsured plaintiffs. In that case, the plaintiffs in the underlying action brought a securities fraud suit on behalf of a putative class of former shareholders of the

*Level 3* involved a claim for coverage under a D & O policy to recoup costs incurred by the insured corporation in defending against, and eventually settling, an underlying securities fraud lawsuit brought by several minority shareholders. A former director of a subsidiary of the insured corporation joined the underlying lawsuit as a plaintiff six months after it was filed, and the insurance company disclaimed coverage based on the "Insured vs. Insured" exclusion in the policy. In his thoughtful analysis of the exclusion's purpose and rationale, Judge Posner recognized that, under the facts of the case, strict application of the exclusion would create the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it." *Level 3 Communications,* 168 F.3d at 960. Judge Posner acknowledged that, while there might be situations where the application of the exclusion "would be too nutty to be tolerable as a contractual interpretation despite its literal accuracy," *id.* at 959, it did not necessarily follow that the rule barring coverage when an insured sues another insured creates a standard requiring the district court to inquire into the collusive potential of the suit or the bitterness of feelings between the parties every time the exclusion is invoked. Such a "mushy, messy standard . . . would be hell for an insurance company to apply when asked to indemnify its insured." *Id.* The court ultimately ruled that the claims of the former director were not covered, but that the claims of the remaining plaintiffs were, taking note of the policy's allocation clause which allowed for an appropriate proportion of the settlement amount to be allocated to the uninsured plaintiffs. *Id.* at 960–61.

In *Sphinx,* a former officer and director of Sphinx International brought a purported securities class action against the company, and solicited other lead plaintiffs by posting a notice on a national newswire service. When the company sought coverage under its "claims made" D & O policy for losses incurred in relation to the suit, its insurer invoked the "Insured vs. Insured" exclusion, and the company sued. The court held that the exclusion barred coverage for the entire action, not just the claims asserted by the former corporate officer. *Sphinx,* 226 F.Supp.2d at 1336–37. The court distinguished the holding in *Level 3* on the ground that in *Level 3* denial of coverage would have transformed a completely covered claim into a completely uncovered claim, whereas in *Sphinx* the plaintiffs' claims were uncovered from the moment they were filed. *Id.* at 1336–37.

*PowerSports* involved a claim for defense and indemnification of an underlying suit brought by the company's founders and former directors alleging that the current board of directors tortiously interfered with the closing of a stock purchase. The insurer denied coverage on the basis of the "Insured vs. Insured" exclusion in the D & O policy, and the company sued. The court found the case "more similar to *Sphinx* than *Level [3]* . . .," since the former directors—"Insured Persons" under the policy—were plaintiffs at the outset of the underlying action, with the result that the action was uncovered from the date it was filed. *PowerSports,* 307 F.Supp.2d at 1361.

---

defendant corporation. The insurer denied coverage on the grounds that the former shareholders were "security holders" and thus "insureds" under the Insured vs. Insured clause. The court disagreed, finding that the term "security holder" applied only to pres-

ent, not past, security holders. *Id.* at 936–37. The court noted in *dicta* that, "[i]f any of the members of the class qualif[ied] as a 'security holder', then the insured versus insured exclusion would apply." *Id.* at 936.

Here, the facts and circumstances of the underlying lawsuit, as well as the pertinent policy language, render the claim for coverage by the Trustees more similar to the claim in *Level 3* than the claims in *Sphinx* or *PowerSports*. Both *Sphinx* and *PowerSports* involved coverage for lawsuits initiated solely by insured parties, whereas two of the three plaintiffs who initiated the underlying ERISA action for which coverage is sought in this case are uninsured Plan participants or beneficiaries, individuals with a clear statutory right to pursue breach of fiduciary duty claims against the Trustees. Plus, the insured individual whose presence Ulico alleges to have contaminated the coverage—Mr. Burke—is no longer a party to the underlying suit. As such, application of the "Insured vs. Insured" exclusion to bar coverage for all claims made at the outset of the ERISA action, including claims belonging to Plan participants that were not intended to fall within the exclusion, would be "too nutty to be tolerable as a contractual interpretation" of the parties' intent under the provisions of the Policy as a whole. *Level 3 Communications*, 168 F.3d at 959.

In addition, the *Sphinx* and *PowerSports* decisions relied on Florida law to find that, where an insured person was a plaintiff at the outset of the underlying action, an "Insured vs. Insured" clause in a "claims made" policy excludes coverage for all claims against the defendant. Under principles of New York law (which control the court's decision in this case), "[i]f any of the claims against [an] insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997). Indeed, "the duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer … and, it is immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions." *Town of Massena v. Healthcare Underwriters Mut.*, 98 N.Y.2d 435, 443–44, 749 N.Y.S.2d 456, 779 N.E.2d 167 (2002) (citations and internal quotations omitted).[4]

In summary, upon endeavoring to construe the Policy as a whole and to interpret the exclusionary language relied on by Ulico in a manner most beneficial to the insured Trustees, I find that adopting the interpretation of the "Insured vs. Insured" exclusion urged by Ulico would render superfluous the bargained-for provision of coverage for claims made against the Trustees in the underlying action arising out of any actual or alleged breach of the duties imposed under the fiduciary standards of ERISA. Accordingly, Ulico has failed to sustain its burden to demonstrate that the allegations of the complaint place the underlying breach of fiduciary duty claims solely and entirely within the "Insured vs. Insured" exclusion of Endorsement No. 2.

## B. Insufficient Contributions

Ulico also seeks summary judgment on the basis of the "Insufficient Contributions" exclusion, which bars coverage for "any claim or allegation which directly or indirectly arises out of the … inability of the Trust Fund to pay benefits due to Insufficient Contributions" (Item 7, Appx. 1, Endorsement No. 4). Again, construing this language strictly and narrowly in favor of the insured, I find that the breach of

---

**4.** As discussed above in the text (at p. 11, *supra*), under principles of New York law there is no relevant difference between allega-

tions triggering an insurer's duty to defend and allegations triggering an insurer's obligation to pay defense expenses.

fiduciary claims in the underlying action do not fall entirely within this exclusionary clause.

Clearly, the allegations in the underlying action are subject to the reasonable interpretation that the breach of fiduciary duty claims arose from the Trustees' alleged mismanagement of the Funds' assets by, for example, failing to retain the services of an independent investment consultant and failing to establish prudent investment policies. These claims are independent of any liability related to the failure of the Fund to collect sufficient employer contributions.

Accordingly, Ulico has failed to sustain its burden to demonstrate that the allegations of the complaint place the defendant Trustees' breach of fiduciary duty claims solely and entirely within the "Insufficient Contributions" exclusion of Endorsement No. 4.

## IV. Ulico's Remaining Affirmative Defenses

Ulico's answer to the third-party complaint sets forth nineteen affirmative defenses (*see, e.g.,* No. 00–CV–65C, Item 58). Ulico has voluntarily agreed to withdraw its First (personal jurisdiction), Second (subject matter jurisdiction), Third (improper venue), Fourth (failure to state a claim) and Eighteenth (Policy's prohibition of action until final determination of obligation to pay) affirmative defenses (*see* Item 12, Ex. A). As part of their summary judgment motion in this case, the defendant Trustees now seek an order striking the remaining affirmative defenses. Each is discussed in turn.

### A. Fifth Affirmative Defense: Improper Joinder

Ulico alleges that it was improperly joined as a third-party defendant in the underlying action. By order entered May 18, 2001 (No. 00–CV–65C, Item 101), this court severed the coverage action from the underlying action, rendering the joinder issue moot.

### B. Sixth Affirmative Defense: Severance

Ulico alleges that the third-party claims were improperly brought and should be severed from the underlying action. This issue is likewise moot as the result of the court's May 18, 2001 severance order.

### C. Seventh Affirmative Defense: Insufficient Notice

 Ulico alleges that it was not provided with sufficient notice of claims under the terms of the Policy. Ulico has not moved for summary judgment on this ground, and its reply to the defendant Trustees' motion to strike this affirmative defense states only that there are factual issues precluding summary judgment with respect to sufficiency of notice.

However, as discussed above, the undisputed facts show that the May 14, 1999 letter from defendant Trustees' special counsel Owen Rumelt, sent within the Policy period, advised Ulico that claims would likely be made under the Policy as the result of his law firm's investigation of the decline in the financial status of the Funds (*see* Item 7, Appx. 24). The letter also provided notice that certain specific instances of alleged mismanagement were under investigation, and advised that these matters "as well as additional claims" would be likely to result in the filing of legal action against the Trustees (*id.* at Page 2).

It is beyond dispute that Mr. Rumelt's May 18, 1999 letter provided Ulico with timely notice of potential claims under the Policy's "Claims Made Extension Clause," which states:

If during the Policy Period the Insured gives written notice to [Ulico] of an act

or omission which the Insured first believes may subsequently result in claim [sic] against him for which coverage would otherwise be afforded, then, any claim which is, in fact, subsequently made against the Insured for such act or omission shall be deemed to have been first made against the Insured during the Policy Period.

(Item 7, Appx. 1, ¶ III). Indeed, Ulico acknowledged this in its disclaimer letter by stating that, although the Policy had expired on July 10, 1999, Mr. Rumelt's letter "potentially could afford coverage for future claims ..." (Item 7, Appx. 35, Page 2).

Ulico also relies on the notice provision in the "Conditions" section of the Policy, which states:

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to [Ulico] or any of its authorized agents as soon as practicable.

(b) If a claim is made or suit is brought against the Insured, the Insured shall immediately forward to [Ulico] every demand, notice, summons or other process received by him or his representative.

(Item 7, Appx. 1, ¶ VII). However, the defendant Trustees have not sought coverage for an "occurrence," a term which is not defined anywhere in the Policy. Rather, the coverage sought is for claims made

and suits brought against the Trustees, as adequately described by Mr. Rumelt in his notice letter, and it is not disputed that all demands, notices, summonses, or other process received by the Trustees were forwarded to Ulico in a timely manner.

Accordingly, there are no genuine issues of material fact precluding judgment in the defendant Trustees' favor as a matter of law on Ulico's Seventh affirmative defense.

### D. Eighth Affirmative Defense: Conditions Precedent

■ Ulico alleges that the defendant Trustees failed to satisfy the condition precedent to coverage, as set forth in the Policy, requiring the absence of material misrepresentations in the Policy application.[5] According to Ulico, the defendant Trustees answered "no" in response to a question on the application asking whether they knew of any facts or circumstances which might result in a claim being made against them, despite substantial evidence to the contrary—as recounted by this court in its February 28, 2003 decision in the underlying action denying the defendant Trustees' summary judgment motions (*see* No. 00–CV–65C, Item 175, at 10–12).

A closer reading of the February 28, 2003 decision reveals that the court's discussion of evidence pertaining to the Trustees' prior knowledge of the failing financial condition of the Fund took place in the context of determining whether the plaintiffs had pleaded sufficient facts relating to fraud or concealment to benefit from the six-year "discovery" limitations period set forth in ERISA § 1113 so as to survive defendants' motion for summary judgment

---

5. Ulico also alleged in its Eighth affirmative defense that the Trustees failed to satisfy conditions precedent with respect to giving timely and sufficient notice and filing actions prior to final determination of the Trustees' obligation to pay any claim. The court has already dealt with the notice issue, and Ulico has withdrawn its Eighteenth affirmative defense based on the Policy's prohibition against the filing of any action until final determination of the Trustees' obligation to pay.

on statute of limitations grounds. The court also discussed certain evidence relied upon by the Trustees in support of their countervailing argument that, during the time the plaintiffs alleged the Trustees engaged in fraud or concealment by increasing benefits to create the illusion of the Fund's sound financial health, the contribution rate was actually increased substantially with no commensurate increase in benefits (*see id.*). Rather than constituting a finding in support of Ulico's contention that there are questions of fact precluding summary judgment in the Trustees' favor on the material misrepresentation issue in this action, the court's discussion of the evidence in its February 28, 2003 decision "merely highlight[ed] the genuine issues of material fact precluding summary judgment" in the Trustees' favor on the statute of limitations issue in the underlying action. *Id.* at 11.

In the absence of any further showing on the part of Ulico that a reasonable insured would have believed the circumstances of the Funds' financial condition at the time the application for insurance was made were such that a fiduciary claim might result, and that Ulico would have acted differently had those circumstances been revealed, *see Christiania General Ins. Corp. of New York v. Great American Ins.*, 979 F.2d 268, 278–79 (2d Cir.1992) (citing New York cases), I find nothing to prevent the court from entering judgment in the defendant Trustees' favor striking Ulico's Eighth affirmative defense as a matter of law.

### E. Ninth Affirmative Defense: Insured vs. Insured

As already discussed at length, Ulico has failed to sustain its burden of showing that the allegations of the complaint place the defendant Trustees' breach of fiduciary duty claims solely and entirely within the "Insured vs. Insured" exclusion contained in the Policy.

### F. Tenth Affirmative Defense: Punitive Damages

The Policy excludes coverage for punitive damages, and Ulico agrees that the inclusion of a claim for punitive damages in the underlying complaint does not defeat coverage as a whole.

### G. Eleventh Affirmative Defense: Intentional Harm

 Ulico alleges that the underlying action must be dismissed based on the Policy's exclusion of claims for intentional harm. However, the court's reading of the underlying complaint indicates that the claims seeking coverage from Ulico are based on allegations of "misfeasance" or "malfeasance" in the discharge of their fiduciary duties, more akin to negligent than to intentional conduct. Nowhere in the underlying complaint do the plaintiffs allege intentional conduct on the part of the Trustees calculated to cause harm to the Funds.

Accordingly, I find no genuine issues of material fact precluding judgment striking Ulico's Eleventh affirmative defense as a matter of law.

### H. Twelfth Affirmative Defense: Expiration of Policy Period

Ulico alleges that the claims for which coverage is sought in the underlying action were not made prior to the termination of the policy period. However, as discussed above, it is beyond dispute that Mr. Rumelt's May 14, 1999 letter—within the Policy period—provided sufficient and timely written notice under the Policy's Claims Made Extension Clause.

### I. Thirteenth Affirmative Defense: Claims Expenses

Ulico alleges that the Policy provides no coverage for "claims expenses," including attorneys' fees. This allegation is directly

contrary to the express terms of the Policy—specifically, Endorsement No. 1, which amends the definition of "Loss" to include "Claim Expenses" (Item 7, Appx. 1, Endorsement No. 1).

### J. Fourteenth Affirmative Defense: Willful or Reckless Violation of Statute

This court's reading of the underlying complaint reveals that there are no specific allegations of willful or reckless violation of any statute, apart from the request for relief in the form of punitive damages which, as discussed above, is properly excluded and does not defeat coverage as a whole.

### K. Fifteenth Affirmative Defense: Assumed Liabilities

Ulico alleges that the underlying complaint should be dismissed because the Policy excludes claims arising out of the liabilities of others assumed under contract. No such claims have been made in the underlying action.

### L. Sixteenth Affirmative Defense: Insufficient Contributions

As already discussed, Ulico has failed to sustain its burden of showing that the allegations of the complaint place the defendant Trustees' breach of fiduciary duty claims solely and entirely within the "Insufficient Contributions" exclusion contained in the Policy.

### M. Seventeenth Affirmative Defense: Known Risk

 Ulico alleges that the underlying complaint should be dismissed based on the "known risk" doctrine—i.e., ". . . that a risk, once 'known' is uninsurable." *City of Johnstown v. Bankers Std. Ins. Co.*, 877 F.2d 1146, 1153 (2d Cir.1989). However, the Second Circuit has "expressly rejected the existence of such a 'known risk' doctrine under New York law." *National*

*Union Fire Ins. Co. of Pittsburgh, PA. v. The Stroh Companies, Inc.*, 265 F.3d 97, 108 (2d Cir.2001) (citing *City of Johnstown*, 877 F.2d at 1152–53).

### N. Nineteenth Affirmative Defense: Material Misrepresentations

As discussed above with respect to Ulico's Eighth affirmative defense (satisfaction of conditions precedent), Ulico has failed to come forward with evidence tending to show that a reasonable insured would have believed the matters set forth in the insurance application contained material misrepresentations, or that Ulico would have acted differently in any event.

### CONCLUSION

Based on the foregoing, I find that Ulico has failed to sustain its burden of showing that the allegations of the complaint place the breach of fiduciary duty claims solely and entirely within either the "Insured vs. Insured" or the "Insufficient Contributions" exclusions contained in the Policy, or that it is otherwise entitled to summary judgment dismissing the third-party complaint against it. I also find that the defendant Trustees/third-party plaintiffs have met their burden of showing that there are no genuine issues of material fact to prevent the court from entering an order striking the affirmative defenses and granting summary judgment in the third-party plaintiffs' favor on the coverage issues raised in this declaratory judgment action.

Ulico's summary judgment motion (Item 5) is denied, and the third-party plaintiffs' summary judgment motion (Item 10) is granted. The Clerk of the Court is directed to enter judgment in favor of the third-party plaintiffs declaring that Ulico is obligated to provide insurance coverage for the claims made against the insured Trustees in the underlying action (No. 00–CV–

65C), pursuant to the coverage terms set forth in Policy No. FLP–1800300.

So ordered.